WILLIAM DEERING & CO.

*v.*

LEROY WASHBURN, Sheriff.

*Filed at Mt. Vernon January 18, 1892.*

1. CHATTEL MORTGAGE—*agreement that mortgagor may sell the property in the usual course of business—fraudulent as to third persons.* An agreement made between the mortgagor and mortgagee, at the time of the execution of a chattel mortgage, that the former may remain in possession of the property until the maturity of the debt, and may sell the same in his usual course of business, and account to the latter for the proceeds of all sales made, followed by such sales at retail in the usual course of business, renders the mortgage fraudulent in law as to creditors of the mortgagor.

2. It has been held in this State, that all sales and conveyances of personal property unaccompanied by a change of possession are fraudulent in law, and void as to creditors of and purchasers from the vendor, unless his retaining possession is consistent with the deed.

3. SAME—*retaining possession by mortgagor.* If the mortgagor remains in the possession of the property, the mortgage will be fraudulent as to creditors and purchasers, unless the mortgage expressly provides for such possession and the statute is otherwise complied with; and if it does provide for such possession during the lien, and at the same time contains an agreement between the parties that the mortgagor may sell the property in the ordinary course of his business, the requirement of the statute will not be complied with.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Fayette county; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. COX & WILLS, for the appellant.

Mr. JOHN A. BINGHAM, and Messrs. WOOD BROS., for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was an action in replevin, by appellant, against appellee, in the circuit court of Fayette county. It was tried before the Hon. James A. Creighton, without a jury, and judgment rendered for the defendant. That judgment has been affirmed by the Appellate Court, and appellant now brings the record to this court by appeal.

Plaintiff below claimed the property in question,—a stock of agricultural implements,—under a chattel mortgage executed to it on the 1st day of February, 1889, by one H. R. Miller, while the defendant justified his seizing and holding the same, as sheriff of Fayette county, under an execution in favor of the Walter A. Wood Mowing and Reaping Machine Company, dated September 22, 1889, and on the same day levied by him on said property. It is admitted that the chattel mortgage was executed, delivered, entered on a justice's docket and recorded, in conformity with the requirements of the statute of this State, and that it provided that the mortgagor might retain the possession of the mortgaged property until the maturity of the debt for which it was given as security, viz., October 1, 1889, with the usual insecurity clause.

The trial was had in the court below on an agreed state of facts, one clause of which is as follows: "That at the time said chattel mortgage was made, and during the summer of 1889, and up to September 27, 1889, said Miller was engaged in selling hardware and agricultural implements at retail, and

by virtue of an understanding entered into between said Miller and plaintiff at the time of executing and delivering said chattel mortgage, said Miller sold a portion of the property described in the chattel mortgage, at retail, in his usual course of business and at its market value, and the entire proceeds of such sales made by said Miller, amounting to $425, were turned over to plaintiff by Miller, in full of proceeds of sales, on November 14, 1889, and was on that day duly credited by plaintiff on said Miller's note, secured by said chattel mortgage; that at the time of making said chattel mortgage, and understanding that Miller might sell a portion of said property, it was further agreed between plaintiff and said Miller, that said Miller should have no beneficial interest in such proceeds except the right to have them credited on said note, and should retain no portion of such proceeds whatever, but should make such sales with the consent of plaintiff, and for plaintiff's sole and exclusive benefit, except that the proceeds were to be credited on said Miller's note, and that said Miller did surrender to plaintiff the entire proceeds of said sales, and retained no portion whatever, and plaintiff gave said Miller credit on said note for the full amount of said sales."

The only question in the case is, did the agreement made between the mortgagor and mortgagee at the time of the execution of said chattel mortgage, that the mortgagor, remaining in possession of the mortgaged property, might sell the same in his usual course of business and account to the mortgagee for the proceeds thereof, as stated in the stipulation, and the fact that the mortgagor, in pursuance of that agreement, did sell a portion of said property at retail, in the usual course of his business, render said chattel mortgage fraudulent in law, and void as to creditors of the mortgagor. That the question is one which has been fruitful of litigation, and that the decisions upon it in this country have not been harmonious, is certainly true. While local statutes have contributed some-

what to this conflict of authority, yet, giving due weight to that consideration, it is impossible to deduce a uniform rule from decided cases on the subject. It would therefore be unprofitable to attempt a review of those authorities, or to place this decision upon any line of cases decided by other courts, especially so, since, while the question as here presented has not been directly decided by this court, there is a well settled current of decisions heretofore rendered by it, which must lead to the conclusion that under our statute a mortgage of personal property, accompanied by an agreement like that set out in the foregoing stipulation, though binding between the parties, is fraudulent *per se* as to third parties, and void. Thus it has been uniformly held in this State that all conveyances of personal property unaccompanied by a change of possession are fraudulent in law, and void as to creditors of and purchasers from the vendor, unless his retaining possession is consistent with the deed; and that within this rule, if the mortgagor in a chattel mortgage remains in possession of the mortgaged property, the mortgage is fraudulent as to such creditors and purchasers unless it expressly provides for such possession, and the statute is in other respects complied with as to its execution, acknowledgment and recording.

These decisions bring us to the inquiry, what kind of possession in the mortgagor, provided for in the instrument, will meet the requirements of the statute? Its language is, "no mortgage, etc., shall be valid, as against the rights and interests of third persons, unless possession thereof (viz., the property,) shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor." (Rev. Stat. sec. 1, chap. 95.) It would seem too clear for argument that this language is irreconcilable with the contention that a provisión in a mortgage which merely provides for a temporary possession with the mortgagor until he can or chooses to sell

the property will validate the instrument as to third parties.
The mortgage creates a lien upon the property for a definite
time.　In order that the possession of the mortgagor be con-
sistent with the mortgage, it must provide for that possession
during the period of the lien.　If it does provide for such
possession during said period, but at the same time contains
an agreement between the parties that the mortgagor may
sell the property in the ordinary course of his business, the
requirement of the statute is no more complied with than if the
provision was that the mortgagor might remain in possession
of the property for ten days, or any other period less than the
lifetime of the mortgage lien.　This is the reasoning in the
cases of *Davis* v. *Ransom,* 18 Ill. 396, and *Read et al.* v. *Wilson,*
22 id. 377.　In the latter case a mortgage provided that the
mortgagor should have possession of the mortgaged property
for two years from the date of the instrument, and "use and
enjoy the same according to the usual course of their retail
trade."　CATON, C. J., rendering the opinion of the court, says :
"The clause allowing the mortgagor to retain possession is
inadequate to the purpose designed, and so far as it was de-
signed to effect that purpose it was fraudulent and void as to
subsequent creditors and purchasers.　A chattel mortgage
without a provision dictated by our statute, authorizing the
mortgagor to retain possession, is held to be fraudulent if
the mortgagor continues in the possession ; and so it must
be held in relation to this mortgage, which must be treated
the same as if this mortgage contained no clause authorizing
the mortgagor to retain the possession, for the clause in this
mortgage was not sufficient to justify such a course.　Such
possession was fraudulent under this mortgage."

　　Again, in *Barnet* v. *Fergus et al.* 51 Ill. 352, it is said, re-
ferring to *Davis* v. *Ransom* and *Read* v. *Wilson, supra :* "It is
a necessary ·consequence of these decisions, that when the
mortgage contains no such provision, but the mortgagee never-
theless knowingly permits the mortgagor to make sale of the

property in the ordinary course of trade, and in the same way as before the mortgage was made, this would be such a perversion of the mortgage from its legitimate purposes as to withdraw from its protection and place within the reach of other creditors all of the property which the mortgagee had permitted the mortgagor to hold for sale in the ordinary course of his business." To the same effect are the cases of *Dunning et al.* v. *Mead et al.* 90 Ill. 376, *Greenebaum* v. *Wheeler,* id. 296, and *Huschle* v. *Morris,* 131 id. 587.

These decisions, it is said, are inapplicable to this case, because, under the agreement of parties to the mortgage in question, the mortgagor was to have no interest in the proceeds of sales made by him, but could only sell for the sole benefit of the mortgagee. That part of the agreement which authorized him to sell the property "at retail, in the usual course of his business, at its market value," is that which destroyed the efficacy of the provision in the mortgage authorizing him *to remain in possession.* We repeat, the question here is, does the mortgage, taken with the agreement, meet the demands of the statute?—and on that question the disposition which was to be made of the proceeds of sales is immaterial. It would be otherwise if the inquiry was whether or not the mortgage was fraudulent in fact. What practical difference could it make to other creditors of Miller whether he paid the proceeds of sales to the mortgagee or not? All that they were bound to know, before asserting their rights as against the mortgagor, was the fact that he, Miller, was permitted by the mortgagee to sell the property after the execution of the mortgage precisely as before. They could not know, nor were they required to know, whether he kept the money by the consent of appellant, paid it over to it as the sales were made, kept it as they did until after an execution lien had attached, or, in fact, whether they ever received any money for such sales.

*Goodheart* v. *Johnson,* 88 Ill. 58, seems to be relied upon with some confidence by counsel for appellant as supporting the distinction between the cases above cited and the one at bar, insisted upon by them. We are unable to give any such construction to that case. There was no general consent, either in or outside of the mortgage involved in that case, whereby the mortgagor was authorized to sell the property, much less to do so in the usual course of business. All that was done by the mortgagee in that case was to give his consent, several months after the mortgage was executed, that the mortgagor might sell certain articles of the mortgaged property for his own benefit, and finally, that he might sell the remainder at public or private sale, he to have the notes for which it sold, if sold on time. The testimony shows that the parties, mortgagor and mortgagee, had determined to sell the property, and the mortgagor simply advertised it in his own name, with the mortgagee's consent, and it was announced at the sale that it was made under the mortgage, for the mortgagee's benefit. We have never understood that a release by the mortgagee of his lien upon a part or all of the mortgaged property would render the mortgage fraudulent *per se,*—and that, at most, was all that was done in the *Johnson case.*

We are satisfied with the conclusion reached by the circuit and Appellate Courts in this case, and are convinced, after a thorough consideration of the arguments submitted to us, that it is the only conclusion consistent with our Chattel Mortgage act, and our former decisions giving construction to it.

The judgment will be affirmed.

*Judgment affirmed.*