## The Southwestern Port Huron Company v. Daniel Carraker.

1. FRAUDULENT CONVEYANCE—*what is not.* A conveyance to a creditor made by a debtor and received by the creditor in good faith to pay a *bona fide* debt, is not a fraudulent conveyance.

2. CHATTEL MORTGAGE—*when upon stock in trade good as to third parties.* A chattel mortgage upon a stock of goods being sold out in regular course of trade is good as against judgment creditors of the mortgagor where possession has been taken under such mortgage by the mortgagee.

Trial of right of property. Appeal from the County Court of Union County; the Hon. MONROE C. CRAWFORD, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

CREIGHTON & THOMAS, for appellant; JAMES LINGLE, of counsel.

P. E. HILEMAN, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

In August, 1904, Jacob W. Carraker, being indebted to appellant, gave his judgment notes for machinery purchased, and in June, 1905, he purchased other machinery for which he also gave judgment notes. Judgments were taken on these notes in the Circuit Court of Wayne county on November 20, 1905. Execution was issued on one of these judgments for $443.18 and on December 29, 1905, execution issued on the other of said judgments for $1,455.90. Both executions were directed to the sheriff of Union county, and by him levied upon a stock of goods and fixtures and two mules at Ware, in Union county, as the property of Jacob W. Carraker, the defendant in the execution. By schedule presented to the sheriff December 4, J. W. Carraker recited that the property in controversy was mortgaged to Daniel Carraker, his father, for $2,150, at the same time claiming and receiving, as exempt, other property not covered by the mortgage. On February 20, 1906, Daniel Carraker gave

notice of his claim to the stock of goods and mules. Appearances were entered, and a trial of right of property by a jury resulted in a verdict for the claimant, referred to in argument. and in this opinion as plaintiff. From a judgment on the verdict, the plaintiff in execution, the appellant, appealed to this court.

On July 12, 1905, Jacob Carraker gave to Daniel Carraker, appellee, a chattel mortgage upon the mules in question and other property to secure the payment of these notes, aggregating $1,150. October 30, 1905, he gave to appellee another mortgage covering the stock of goods in question to secure the payment of $1,000. This mortgage contains the provision that the "mortgagee shall keep possession of said property, and he, his executors, administrators and assigns and agents may sell said stock of merchandise at retail in due course of business and account for the same to the mortgagor, and at the end of each month credit the total amount of the sales thereof on said note, less however the necessary cost of making said sales and running said business including the wages of the mortgagee in running said store and business." In other respects the mortgage is in the usual form of such instruments. On the same date, October 30, 1905, Jacob and wife executed a real estate mortgage to appellee to secure the payment of $500. On June 12, 1905, Jacob and wife executed a warranty deed to his wife to sell his real estate for the expressed consideration of $1,500. For about a year prior to the transactions of October 30, 1905, Jacob Carraker owned the stock of goods and conducted the store by appellee, his clerk and agent. During this time he was engaged in farming and operating threshing machinery, only coming to the store occasionally, and left the management of the store business to his father, the appellee, who lived in the building. It is in evidence that a few days before the mortgage of October 30, 1905, was executed, Jacob Carraker turned over the store to appellee to apply on his indebtedness, and thereafter, that he had no connection with it. He then executed the mortgage, had it recorded and delivered it to his father who knew nothing of the mort-

gage until the same was delivered to him. There is no conflict in the evidence that Jacob W. was indebted to appellee largely in excess of the value of goods covered by the mortgage of October 30. That Jacob Carraker was insolvent, that he was justly indebted to his father, and by the mortgage intended to give him a preference over other creditors, especially appellant, and put beyond their reach the property conveyed, clearly appears from the evidence. But it does not appear, and there is nothing in the evidence to justify the inference that appellee, himself a creditor, was intentionally a party to any purpose to hinder, delay or defraud other creditors. If the transaction to which he was a party, and what was done by him thereafter may be construed as a fraud in law, notwithstanding the innocence of his motive, his claim to the property must yield; otherwise not.

That a failing debtor may prefer one creditor to another, and by payment in money or property, satisfy in full one or more of his creditors to the exclusion of others, will not be controverted. And this may be done where the relationship of debtor and creditor is between kindred or members of the same family. When such a transaction is brought in question as a transfer of property to hinder, delay and defraud creditors, which the law will not permit, the chief inquiry is as to the good faith of the parties, and to meet that requirement, it must appear from the evidence, first, that there is a *bona fide* debt to be paid, and second, that the property or money is given by the debtor, and received by the creditor, in good faith, to apply in the payment of the debt. Because of its effect in placing the property of the debtor beyond the reach of creditors not preferred, such transactions, when challenged, are subject to close scrutiny, and if tainted with fraud, in purpose or effect, the law will not allow them to stand. It is not permitted a debtor and creditor, under color of satisfying even a *bona fide* debt, to so deal with the property of the debtor as to shield it from the claims of creditors. And if it turns out that the payment, or property transferred, is in excess of the debt, or if there is a trust or under-

standing, between the debtor and creditor, that the property, or only that which is in excess of the debt, shall be held for the benefit of the debtor, the law will hold the transaction fraudulent and set it aside. Other things may enter into the consideration, such as the peculiar form of the contract by which it is sought to transfer the property, the delivery and possession of the same, and the right, if any, left in the creditor. In the case at bar, the only fact that seems to be seriously controverted is that relating to a change in possession of the property in question, and this we think was fairly submitted to the jury and by them determined adversely to appellant. Whether the transfer of the stock of goods to appellee was by mortgage or sale can make no difference, if what was done was in good faith to pay the debt owing by J. W. Carraker to appellee. As a sale outright in payment of the debt, or as a mortgage which in terms authorized appellee to sell the property and apply the proceeds on the debt, the property being delivered, and in possession of the appellee, there was naught in the transaction to render it fraudulent *per se*. In form, the instrument by which the property was conveyed is a mortgage, but inasmuch as the execution of the mortgage is preceded by a delivery of the property to the mortgagee, and by expressed terms the mortgagee is empowered to sell and apply the proceeds in payment of the debt, and as it clearly appears, from the undisputed evidence, that the debt to be paid is largely in excess of the value of the property to be sold, the entire interest of J. W. Carraker is absorbed by the debt, and the final result as to his interest in the property, is precisely the same as in an absolute sale. The proposition urged by appellant, that a chattel mortgage, on a stock of goods being sold out in regular course of trade, is void as to creditors of the mortgagor, has no application where, by the instrument itself, possession is given to the mortgagee. The case of Deering & Company v. Washburn, 141 Ill., 153, and other cases cited by appellant, do not support the contention. Such a mortgage is no more nor no less than a pledge of goods for the payment of a debt, and the pledgee

being in possession, the instrument by which he holds need not even be recorded, provided always that fraud upon creditors was not intended or effected in the manner above indicated.

By eight instructions given in behalf of appellee, to which no objections are pointed out, and nine instructions given at the instance of appellant, the jury were fully and clearly directed as to the law applicable to the issues on trial.   As stated in appellant's fifth given instruction, the sole question for the jury to try was, whether the claimant Daniel Carraker was the owner of and entitled to the possession of the property in dispute, and upon that issue, under proper instructions as to the law, the jury found against appellant and we are not prepared to say that their verdict is not warranted by the evidence.

Finding no prejudicial error in the proceedings, the judgment of the County Court will be affirmed.

*Affirmed.*