## Fred Morrison, Appellant, v. W. J. Elzy et al., Appellees.

1. **Chattel mortgages**, § 29*—*what is effect of incorrect description of property.* An incorrect description of a part of the property included in a chattel mortgage will not invalidate the mortgage as to the part correctly described.

2. **Chattel mortgages**, § 30*—*when description of property sufficient as notice.* If the description of property in a chattel mortgage is such as will enable third persons to identify the property, aided by inquiries which the mortgage indicates, then the mortgage is constructive notice to parties even who purchase in good faith.

3. **Chattel mortgages**, § 30*—*what is effect of false description of property.* A description of property in a chattel mortgage which is wholly false voids the mortgage.

4. **Chattel mortgages**, § 100*—*when mortgagee estopped to deny validity of prior mortgage.* Where a chattel mortgage to a bank described the cattle mortgaged as being subject to a prior mortgage, and the agent of the bank was informed by the mortgagor about the cattle being covered by the prior mortgage, such bank was in no better position than the mortgagor to object to the partially inaccurate description in the prior mortgage; and since the bank only received a conveyance of the equity of the mortgagor, it was estopped to deny the title of the prior mortgagee.

5. **Chattel mortgages**, § 269*—*when proceeds of sale should be held in trust.* Where a bank was the holder of a second chattel mortgage and knew of the prior mortgage on such chattels, and it consented to a sale of the chattels and received the proceeds of the sale by virtue of its mortgage, such proceeds were held in trust for the holder of the first mortgage.

6. **Appeal and error**, § 1096*—*what brief should contain.* Briefs and arguments containing insinuations reflecting on the trial court should, on motion, be stricken from the records.

Appeal from the Circuit Court of Shelby county; the Hon. Albert M. Rose, Judge, presiding. Heard in this court at the April term, 1914. Reversed and remanded with directions. Opinion filed October 16, 1914. Rehearing denied December 2, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On October 15, 1910, W. J. Elzy bought from Fred Morrison sixty-one head

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of steers for $2,767.84, for which he gave Morrison a note bearing seven per cent. interest, payable July 1, 1911. To secure the payment of this note Elzy gave a chattel mortgage on these cattle in which the mortgaged property is described as "61 head of 2 yr. old short-horn steers." The mortgage was properly acknowledged and recorded.

On January 21, 1911, Elzy gave a promissory note to J. E. Dazey for $1,557.55, due four months after date with interest at seven per cent. This note was secured by a chattel mortgage on "sixty-two head of coming three year old steers, consisting of Hereford, Polled Angus and Short-Horn stock, subject to a former mortgage to Fred Morrison."

On May 22, 1911, Elzy renewed the note and mortgage to Dazey, the new note being for $1,593.90, due sixty days after date. The new chattel mortgage to Dazey described the stock the same as it was described in the first mortgage to him, and recited that it was given subject to a former mortgage to Fred Morrison.

Dazey was cashier of the First National Bank of Findlay, and the notes and mortgages were given to him for the bank and were indorsed by him to the bank without recourse.

On June 6, 1911, sixty-two head of steers and five cows were shipped by Elzy to the stock yards in Chicago for market. Dazey and Elzy were both in Chicago at the stock yards when the cattle were sold. The net proceeds of the sale of the cattle after deducting freight and expenses were $3,797.91. The proceeds of the sale of the cattle on Dazey's demand were placed in the Ft. Dearborn Bank to be placed to the credit of Elzy in the First National Bank of Findlay. Morrison had no knowledge of the Dazey mortgage or the shipping of the cattle to Chicago.

The First National Bank of Findlay on June 8th credited Elzy's account with $3,587.65, the proceeds of the sale of the steers, and charged against Elzy's ac-

count $1,600, the amount due on the note and mortgage given to Dazey; on June 12th it charged to Elzy's account $200, that was due on a demand note executed by Elzy to Dazey and indorsed to the bank May 15, 1911, and $325, the principal of a note given by Elzy to the bank dated March 11, 1911, due June 11, with interest at seven per cent. after due.

On June 10, 1911, the Farmers' Bank of Gays, which had recovered a judgment against Elzy for $522.21, caused a summons in garnishment to be issued and served on the First National Bank of Findlay as garnishee of Elzy. The bank answered in the garnishment suit that it had on deposit $522.21 in the name of Elzy.

Morrison learned of the sale of the cattle and immediately went to Elzy and the Bank of Findlay and demanded that his note be paid from the proceeds of the sale of the steers. The officers of the bank told him that it had applied the proceeds on the payment of its mortgage note and other notes held by it and that it had been served with garnishee process for $522.21, and gave Elzy a check for $910.44, claiming that was the balance it had to Elzy's credit. This check Elzy gave to the attorney for Morrison.

In October, Morrison brought suit at law against the First National Bank of Findlay to recover for money had and received for his use. At the November term, after the trial of this suit had been begun, it was transferred from the law to the chancery docket with leave to plaintiff to file a bill in equity and make new parties.

A bill in equity was filed by Morrison in which the First National Bank of Findlay, Elzy, Dazey, The Farmers Bank of Gays and the stock dealers in Chicago, who bought the cattle, were made parties defendant to the bill. It sets forth the facts hereinbefore stated, alleges fraud on the part of the First National Bank of Findlay and Elzy, and that complain-

ant is not able to designate accurately, by reason of the mingling and adding to the number of cattle that complainant's mortgage covers, what proportion of the money the sixty-two steers sold for, the sixty-one head of cattle mortgaged to complainant brought, nor the proportion of the expenses chargeable to each, and prays that complainant may have a prior lien on the proceeds of said cattle sold and that the claims of the parties be marshaled.

The several defendants answered the bill. The answer of the First National Bank of Findlay and Dazey admits the taking of the notes and mortgages from Elzy to Dazey and by him assigned to the bank, and denies that the mortgages assigned to the bank were on the same cattle that were included in the Morrison mortgage. The answer denies all fraud, and sets up the garnishment proceedings. The Farmers Bank of Gays adopted the answer of the Bank of Findlay.

Elzy answered admitting the giving of the notes and mortgages, but denies that the mortgages cover the same property; states that the claims of complainant against him have been fully settled and paid by the sale to complainant of cattle, mules and other property, and that the claims of complainant against him have also been settled by a discharge of the defendant in a proceeding in bankruptcy. Replications were filed and at the trial the evidence was heard in open court. A decree was entered dismissing the bill for want of equity, from which Morrison appeals.

Chafee & Chew, J. G. Burnsides and George B. Rhoads, for appellant.

Whitaker, Ward & Pugh and E. A. Richardson, for appellees.

Mr. Presiding Justice Thompson delivered the opinion of the court.

The question in this case is whether the mortgage given by Elzy to Morrison on sixty-one steers was such as will hold the proceeds of the sale of the stock which were received by the First National Bank of Findlay. The evidence shows that the description of the stock was not such that it could all be identified by a third party. The description in the Morrison mortgage is: "61 head of 2 yr. old short horn steers." The proof shows that the cattle were of mixed stock. The greater number of the steers were red or roan two years old, which were half or more than half short horns. There were a number of the steers in which Hereford or Polled Angus was the prevailing type. They were all two-year-olds, and were lotted in Chicago, and sold as short horns or Herefords.

Dazey, the cashier of the bank to whom the mortgage and note assigned to the Bank of Findlay were given, had no interest in them. The description of the property is the same in both mortgages given to Dazey and both contain the provision that they are given subject to a former mortgage to Morrison. The agent of the bank who made the loan and accepted the mortgage was told at the time that Morrison had a prior mortgage on the stock on which the bank was taking a mortgage.

The joint answer of the bank and Dazey states, "that many, if not all of the cattle so shipped were not mentioned in any of said mortgages unless it be that they were mentioned in the last mortgage given to the said Dazey," and "alleges that said Dazey hearing of a proposed shipment of cattle by the said Elzy from Findlay to Chicago, went to Chicago for the purpose of protecting the rights of the First National Bank of Findlay, if need be, in the mortgage which it then held executed by the said Elzy and for no other purpose." The record shows that the same counsel appear for, filed the answers for and represent the bank, Dazey and Elzy.

The preponderance of the proof is that the steers sold by Morrison to Elzy were kept on a farm, known as the Lanham farm, with some younger cattle and that none of the Morrison cattle were sold at the public sale that Elzy had in December, 1910; that these cattle were included in the Dazey mortgage with another steer; that the steers sold in Chicago by Elzy were the ones he bought of Morrison, and that Dazey, in the stock yards at Chicago, demanded by virtue of the mortgage held by the bank that the proceeds of the sale of the cattle in Chicago be deposited in the Bank of Findlay, when Elzy stated that the Morrison mortgage on these cattle must be paid. The conclusion is inevitable that the Bank of Findlay received the proceeds of the cattle only because of its second mortgage.

The settlement of the Chicago commission house that sold the stock shows that sixty-six cattle were sold for Elzy on June 7th for $3,941.89, of which five were cows sold on the account of a neighbor for $251.24; that the expenses of the sale including freight and commissions were $143.98; and that the net proceeds of the sale of the sixty-one steers were $3,546.17, without making any deduction from the expense account for the expenses chargeable against the five cows. From this statement it would appear that only sixty-one steers were shipped to Chicago.

An incorrect description of a part of the property included in a chattel mortgage will not invalidate the mortgage as to the part correctly described. If the description of the property in a chattel mortgage is such as will enable third persons to identify the property, aided by inquiries which the mortgage indicates, then the mortgage is constructive notice to parties even who purchase in good faith. A description wholly false voids the mortgage, but if a part of the description only is false, this may be rejected and the mortgage will take effect, if the remainder of the descrip-

tion is sufficient, aided by inquiries which the mortgage suggests, to enable the property to be identified. *Boyle v. Miller,* 93 Ill. App. 627, 5 Am. & Eng. Encyc. of Law, 958; 6 Cyc. 1036. "Persons with actual knowledge of the property covered by the mortgage stand in no better position than the mortgagor in respect to their right to object to an insufficient description." 6 Cyc. 1023, and authorities there cited.

Such of the steers as were grade short horns were accurately described. All the steers were described as two-year-olds. These steers included in the Morrison mortgage were all two-year-olds and were kept and fed by themselves, except that there were some yearling cattle with them.

The mortgage to the bank described the cattle mortgaged to it as subject to the Morrison mortgage. The agent of the bank who took its mortgages having been informed by Elzy at the time the first bank mortgage was taken about the cattle being covered by the Morrison mortgage, the bank stands in no better position than Elzy to object to the partially inaccurate description in the Morrison mortgage. The bank is estopped to deny the title of Morrison for the reason that all the title the bank received was a conveyance of the equity of Elzy. The bank being represented at the sale in Chicago, consenting to it and receiving the proceeds of the sale of the mortgaged cattle by virtue of its mortgage, must be held to hold the proceeds in trust for the holder of the first mortgage. The net proceeds of the sale of the cattle sold in Chicago were more than the amount due on the Morrison note, and the balance unpaid on that note must be paid from the proceeds of the sale.

There is an issue in the case as to whether or not Morrison was paid anything on the note dated October 15, 1910, by the purchase of stock at the sale held by Elzy in December, 1910. Morrison testified that the price of the cattle and other property bought by him

at that sale was credited on a $2,000 note and mortgage held by him against Elzy, while Elzy testified that it was credited on the note of October 15, 1910. We express no opinion concerning this issue.

Counsel for appellant in their original argument and in their reply have gone out of the record to abuse the trial court by insinuations reflecting on the court which are unseemly and unprofessional. Such practice should not be passed by without comment. Briefs and arguments containing such insinuations, on motion, should be stricken from the files.

The decree is reversed and the cause remanded with instructions to state the account as to the amount due and unpaid on the note of October 15, 1910, and to render a decree for the balance due on that note to be paid by the First National Bank of Findlay out of the proceeds of the sale of the sixty-one steers covered by the mortgage given by Elzy to Morrison.

*Reversed and remanded with directions.*