## UNITED STATES v. CHRISTENSEN.
### No. 315.

District Court, E. D. Illinois.
May 12, 1943.

Ray M. Foreman, U. S. Attorney, of Danville, Ill., and Miles S. Odle, of Hoopeston, Ill., for plaintiff.

LINDLEY, District Judge.

The United States seeks to replevin a tractor now in possession of defendant.

One Woolems, a tenant farmer, borrowed $990 from the Government in 1937, and, to secure the loan, mortgaged his farm implements, grain and livestock. Subsequently, before maturity, Woolems, becoming financially involved, visited the local Government agent in the county seat, accompanied by one Hodel, an implement dealer, to see about selling the tractor. Woolems told Sullivan, the agent, that he no longer intended using the tractor, and suggested that Hodel might be able to dispose of it and that thus the Government would receive some of its debt. It was agreed that the implement was of the reasonable value of $500, and that, if a purchaser could be found, Hodel, acting as Wollems' agent, might sell it, keeping whatever he could obtain above that amount. It was stipulated that Hodel should take a check payable jointly to mortgagor and mortgagee.

Hodel painted and repaired the tractor, drove it to defendant's farm and sold it to him for $600. In violation of the arrangement, Hodel accepted a check payable to himself alone for $450 and a team of horses valued at $150. He subsequently sold the horses, cashed the check and converted the proceeds to his own use, later paying, however, some of the money, at least, in installments to Woolems. The Government received nothing.

Defendant lived on a farm adjoining Woolems and had seen the latter using the tractor frequently over a period of three years. On the witness stand, he was noticeably equivocal as to his recognition of the tractor as the one belonging to Woolems. But from all the evidence I deem it clear that he knew it was Woolems' when he bought it. His knowledge in this respect, however I think unimportant, for the mortgage was recorded, and, had he investigated, he would have learned that the tractor was mortgaged. As a matter of law, he was, at the time of the purchase charged with all the knowledge he would have acquired, had he made a reasonably prudent examination of the records. Consequently, he can not claim protection as a bona fide purchaser without notice.

Defendant contends, however, that the description of the property in the mortgage was so indefinite that such an examination would not have identified the tractor as the one covered by the lien. It read: "one tractor, Moline 10-20 Farmall, condition good, year of manufacture, 1937."

The requirements of sufficiency of the description in a chattel mortgage are less rigid than those in case of realty. The entire instrument, as well as the nature of the property, is to be considered. 14 C.J.S., Chattel Mortgages, § 56, p. 658; 11 C.J. 456. As against third persons, the mortgage must contain such information as to enable inquiring persons to identify the chattels; but it is not essential that the description be so specific that the property may be identified from it alone, if it suggests inquiries as to identification which, if pursued, will disclose just what property has been transferred. Southern Illinois Nat. Bank v. Thaxton, 224 Ill.App. 554, 557; Boyle v. Miller, 93 Ill.App. 627, 628; Morrison v. Elzy, 190 Ill.App. 374, 379; 14 C.J. S., Chattel Mortgages, § 57, p. 660; 11 C.J. 457; see Bell v. Prewitt, 62 Ill. 361, 366.

In Southern Ill. Nat. Bank v. Thaxton, supra, the property mortgaged was "one ten-ton steam roller and one two and one-half ton steam roller." The court held the description sufficient, since the mortgagor had only the two rollers, and the wording was such as would put a third person on inquiry, which, if pursued would have resulted in identification. The court cited Nelson v. Howison, 122 Ala. 573, 25

So. 211, where a description of "one engine and one boiler" was held adequate; and Desany v. Thorp, 70 Vt. 31, 39 A. 309, 310, where the words "eighteen cows, three yearling heifers, and five heifer calves" were held enough to satisfy legal requirements, since the mortgagor owned no other animals. Similar in conclusion and reasoning are Boyle v. Miller, 93 Ill.App. 627, where the words were "twenty-three yearling steers, red, roan and black"; and Bell v. Prewitt, 62 Ill. 361 where the recital was, "twenty two-year old steers on the same farm." The present case is on all fours with the Thaxton case. Here the chattel was described as "one tractor, Moline, 10–20 Farmall, condition good, year of manufacture, 1937." It was the only implement of the kind owned by the mortgagor. The description was adequate to put third parties on inquiry, and any investigation made would have established identity.

■■ Defendant urges that the Government has lost its lien by failure to institute proceedings within 90 days after maturity, as required by Section 4 of chapter 95 of the Illinois Revised Statutes, providing that a chattel mortgage, properly acknowledged and recorded, is "good * * * until ninety days after maturity of the entire debt." If a mortgagee fails to assume possession of the mortgaged chattels within 90 days after maturity, the lien is invalid as to bona fide purchasers who acquire the mortgaged property after 90 days have elapsed. Jones v. Noel, 139 Ill. 377, 28 N.E. 805. The reason behind the rule is that failure to take possession within 90 days tends to work a fraud on bona fide creditors or purchasers, since continued possession is not consistent with the recorded mortgage. Jones v. Noel, 139 Ill. 377, 28 N.E. 805. In this case, however, defendant bought the tractor on April 14, 1940, prior to the maturity date of the obligation, December 30, 1940, charged with notice that it was Woolems' with at least constructive knowledge of the mortgage. At that time there was nothing in the possession of the tractor by Woolems or his agent inconsistent with the terms of the mortgage. The lien was still existent as against the mortgagor and his purchaser before maturity taking with notice. Arnold v. Stock, 81 Ill. 407, 408; Sondheimer v. Graeser, 172 Ill. 293, 50 N.E. 174; Blake-Silkwood Motor Co. v. Spires, 245 Ill.App. 148, 149, 151; Twaits v. Willy H. Lau Co., 176 Ill.App. 588, 589; Sumner v. McKee, 89 Ill. 127. What defendant's rights might be had he purchased after maturity is wholly beside the point.

We approach the final question,—whether, upon the facts, a waiver of the government's lien arose from Sullivan's permission to the mortgagor to sell. This, in turn, depends upon whether defendant was bound to know of Sullivan's limited authority.

■ In Illinois a chattel mortgagee's consent to sale of mortgaged property by the mortgagor, followed by sale pursuant thereto, constitutes a waiver. Aleshire v. Lee County Sav. Bank, 105 Ill.App. 32; Farmers' & Merchants' Bank v. Arnold, 58 Ill.App. 349; Elzy v. Morrison, 180 Ill. App. 711; William Deering & Co. v. Washburn, 141 Ill. 153, 29 N.E. 558; John Deere Plow Co. v. Herschbarger, 260 Ill.App. 227; 97 A.L.R. 646. See Brandt v. Daniels, 45 Ill. 453. And if the mortgagee also consents to receipt of the proceeds of sale by the mortgagor, he loses his lien even if the mortgagor fails to account. First Nat. Bank & Trust Co. v. Stock Yards Loan Co., 8 Cir., 65 F.2d 226; Moffet Bros. & Andrews Comm. Co. v. Kent, Mo. Sup., 5 S.W.2d 395; Deering & Co. v. Washburn, 141 Ill. 153, 29 N.E. 558; Abbeville Live Stock Co. v. Walden, 209 Ala. 315, 96 So. 237; Frick Co. v. Western Star Mill Co., 51 Kan. 370, 32 P. 1103; Maier v. Freeman, 112 Cal. 8, 44 P. 357, 53 Am.St. Rep. 151; 97 A.L.R. 660.

■ Here, however, another factor must be considered, namely, that the permission to sell emanated from an alleged authorized agent of the Government. Determinative is, whether, on the facts involved, Sullivan, the local agent, could bind the Government. To speak authoritatively for the Government, its agent must act only strictly within his official grant of power; everyone who deals with him takes the risk of his doing so. Wilber Nat. Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; Whiteside v. United States, 93 U.S. 247, 23 L.Ed. 882; United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; Roth v. Hood, 6 Cir., 106 F.2d 616; Coleman v. United States, 6 Cir., 100 F.2d 903; United States v. Hawthorne, D.C., 31 F. Supp. 827, affirmed 5 Cir., 115 F.2d 805; United States v. American Sales Corp., D. C., 27 F.2d 389, affirmed 5 Cir., 32 F.2d

141. In other words, the powers of governmental representatives are created, defined and limited by legislation and no act by an agent exceeding his legislatively delegated authority constrains the United States.

Under the regulations of the Farm Security Administration it is specifically provided that before a mortgagor may find a private purchaser for the incumbered property, he must make written application to the regional office for authority to sell. Collecting officials, such as Sullivan, are empowered only to submit an offer to release a lien upon repayment of the indebtedness. Such offer must be made on a form provided by the Administration. One copy must be sent to the regional office, one kept by the collecting official, and one given the borrower. Nowhere appears any provision authorizing the agent to grant permission to sell mortgaged property or to release the security.

 Since departmental regulations properly adapted to enforcement of a statute have the force of law, Daeuffer-Liberman Brewing Co. v. United States, 3 Cir., 36 F.2d 568; Sawyer v. United States, 2 Cir., 10 F.2d 416; and it is clear Sullivan acted beyond his official authority, his acts were ineffective to bind the Government. United States v. Chickasha Cotton Oil Co., 10 Cir., 115 F.2d 135; United States v. Thomas, 5 Cir., 107 F.2d 765; Wilber Nat. Bank v. United States, 2 Cir., 69 F.2d 526; United States v. Standard Oil Co. of California, D.C.Cal., 20 F.Supp. 427. Thus, in United States v. Chickasha Cotton Oil Co., 10 Cir., 115 F.2d 135, 137, Brooks mortgaged certain cotton crops to the Administration. After picking the cotton, he sold it to defendant. He failed to deliver the proceeds to the Government, whereupon the latter sued defendant to recover the amount paid by it to Brooks. It was urged in defence that the United States could not recover, because the rural supervisor had made it a practice to permit mortgagors to market their cotton, collect the proceeds, and pay the proceeds to the Government. The court held to the contrary saying: "The record is barren of any indication that the local agent was empowered by any superior authority to waive chattel mortgage liens of the United States. And, in the absence of expressly conferred power emanating from an authorized source, he could not waive by conduct or otherwise the lien upon the property sold to defendant."

In United States v. Thomas, 5 Cir., 107 F.2d 765, 766, the facts were similar. In holding that the Government mortgagee might successfully sue for conversion a purchaser of mortgaged goods, the court said: "Agents or employees of the Government had no authority to waive the chattel mortgage liens. Waiver was not a good defence."

I conclude that Sullivan had no power to permit private sale of the mortgaged tractor or to waive the lien. And, since the Government is not bound by acts of its agents which are not expressly authorized and defendant was bound to know and recognize the statutory limitations imposed upon such agents, Sullivan's oral permission to sell, with its otherwise effective waiver, was inoperative.

The foregoing includes all my findings of fact and conclusions of law.

Judgment will enter as prayed.