**UNITED STATES of America,**
**Plaintiff,**

v.

**Raymond H. SWINT, Defendant.**
**Civ. A. No. 1497.**

United States District Court
W. D. Arkansas,
Fort Smith Division.
Aug. 4, 1960.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Jeptha A. Evans, Booneville, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action in which the Government seeks to recover the balance, plus interest, allegedly due it under a series of loans made by the Farmers Home Administration to the defendant. This court has jurisdiction pursuant to 28 U.S.C.A. § 1345.

The Government alleges that the defendant executed six promissory notes on the dates and for the amounts indicated below:

| Date | Amount | Date Payable | Interest Rate |
|------|--------|--------------|---------------|
| 9-15-34 | $ 30.00 | 11-1-35 | 5½% |
| 10-29-34 | 20.00* | 11-1-35 | 5½% |
| 12-15-34 | 25.00 | 11-1-35 | 5½% |
| 2-4-35 | 25 00 | 11-1-35 | 5½% |
| 10-11-50 | 2,325.00 | 11-1-55 | 5% |
| 9-4-51 | 275.00 | 11-1-55 | 5% |

* Reduced by endorsement to $15.00.

The Government further alleges that it is now entitled to recover of and from the defendant, after allowing due credit on the notes, the total sum of $514.46 principal, plus interest in the sum of $242.47 as of June 4, 1959, plus interest after June 4, 1959, until paid, at the rate of $0.0718 per day.

In his answer the defendant admits that he executed the six notes in question, but denies that there is any balance due. Paragraphs III and IV of the answer set forth the defendant's position regarding the alleged payments:

"III.

"Further answering, defendant says that in the late summer or early fall of the year 1953 he requested authority of Mr. John Lachowsky, Logan County Supervisor, Rural Rehabilitation Service and Farmers Home Administration, for authority and permission to sell his cattle, upon which the plaintiff had a mortgage, for the purpose of paying his indebtedness to plaintiff; that at the time he made this request the cattle were in such condition and the price was such that they would have brought an amount sufficient to pay all of the indebtedness owed by the defendant to the plaintiff; that this request and authority was denied the defendant.

"IV.

"That in March, 1954, the above named, John Lachowsky, Supervisor for the Farmers Home Administration and Rural Rehabilitation Service, an agent, servant and employee of plaintiff, directed this defendant, over his objections, to dispose of the chattels upon which plaintiff then held a mortgage; that at that time the condition of the cattle was such and the price of cattle was such, that defendant feared that they would not bring an amount sufficient to pay the indebtedness but by direction of Lachowsky defendant did sell said cattle; that Lachowsky told defendant that the sale of the cattle and the payment of the proceeds over to the plaintiff would constitute full and complete settlement and satisfaction of the indebtedness to plaintiff; relying upon the representations and assurances made to him by plaintiff's agent, aforesaid, this defendant sold the chattels upon which plaintiff held a mortgage, turned the money in to the above named Lachowsky with the understanding and agreement that this conduct constitutes full and complete satisfaction, release and discharge of all indebtedness to plaintiff and satisfaction, release and discharge of all liens upon any property of defendant."

On July 6, 1960, the plaintiff moved for summary judgment pursuant to Rule 56(a), Fed.R.Civ.P. 28 U.S.C.A. Such motion is opposed by the defendant. Briefs have been received from

plaintiff and defendant and considered in support of their respective positions. For the purpose of this motion the court considers the allegations contained in paragraphs III and IV of the answer as true. Since the court must treat the allegations of the answer as true, there is only one question to be answered— did the County Supervisor have authority, either express or implied, to compromise the defendant's indebtedness? If he did, then the plaintiff's motion must be overruled and the case tried on its merits. If he did not have such authority, then the plaintiff is entitled to summary judgment.

Title 6, Chapter III, Part 364, of the Code of Federal Regulations, provides for settlement procedures in instances such as this. The officials authorized to compromise, adjust, or cancel claims are designated in Sec. 364.8(a), which provides as follows:

"Subject to the policies, procedures, and limitations set forth in this part, State Directors are authorized to approve the compromise, adjustment, and cancellation of debts due the Farmers Home Administration upon application by borrowers, and to cancel or charge-off debts due the Farmers Home Administration. This authority may be redelegated to Assistant State Directors and Chiefs responsible for Production Loan operations, upon special authorization from the Administrator."

The duties of the County Supervisor with respect to the compromise, adjustment, or cancellation of debts are set forth in Sec. 364.7. Subsection (a) provides that the required form, Form FHA-858, will be signed by the borrower and filed in the county office and then forwarded to the state office for action. Subsection (b) provides that Form FHA-859 will be used for cancellation of debts without application by the borrower. Form FHA-859 is to be signed by the County Supervisor and submitted to the state office along with the borrower's case file for action.

From reading the above sections, it is clear that for a compromise, adjustment, or cancellation of debts, either the borrower must make an application on Form 858, which must be forwarded to the State Director, or in the event that a debt can be settled without an application, then the form must be submitted to the state office by the County Supervisor and only the State Director may act finally on such matters. It does not appear that such steps were taken here.

The defendant earnestly contends that while actual authority to compromise, adjust, or cancel debts due the Farmers Home Administration was not delegated to the County Supervisor, that nevertheless the County Supervisor had implied authority to so act. The defendant further contends that there is a fact question presented as to whether or not the defendant had notice of the limitations of the authority of the County Supervisor. Similar arguments were advanced by the respondent in Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10. There the Federal Crop Insurance Corporation, a wholly Government-owned corporation, promulgated and published in the Federal Register regulations specifying the conditions on which it would insure wheat crops, including a provision making "spring wheat which has been reseeded on winter wheat acreage" ineligible for insurance. Without actual knowledge of this provision, a wheat grower applied to the corporation's local agent for insurance on his wheat crop, informing the local agent that most of it was being reseeded on winter wheat acreage; but this information was not included in the written application. The corporation accepted the application subject to the terms of its regulations. Most of the crop on the reseeded acreage was destroyed by drouth, and the Supreme Court held that the corporation was not liable on the reseeded acreage.

In disposing of the case, the Court at pages 383–384 of 332 U.S., at page 2 of 68 S.Ct. said:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e.g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40, and see, generally, The

Floyd Acceptances, 7 Wall. 666, 19 L.Ed. 169."

Thus it is settled that persons dealing with an agent of the United States are charged with notice of the limitation on his authority and that the United States is bound only by the acts of an agent which are within his authority. Farmers Security Administration, Department of Agriculture v. Herren, 8 Cir., 1948, 165 F.2d 554.

A case that is perhaps closest in its facts to the instant one is United States v. Christensen, D.C.E.D.Ill.1943, 50 F. Supp. 30. There a farmer had borrowed money from the Government and as security had mortgaged his farm implements. The mortgage was duly recorded. Before maturity, the farmer sought and received permission from the local agent to sell one of his tractors covered by the mortgage. The tractor was sold, and the Government subsequently sought to replevin it from the purchaser. The District Court held that in Illinois a chattel mortgagee's consent to the sale of mortgaged property by the mortgagor followed by a sale constitutes a waiver. However, the court added at pages 32 and 33 of 50 F.Supp.:

"Here, however, another factor must be considered, namely, that the permission to sell emanated from an alleged authorized agent of the Government. Determinative is, whether, on the facts involved, Sullivan, the local agent, could bind the Government. To speak authoritatively for the Government, its agent must act only strictly within his official grant of power; everyone who deals with him takes the risk of his doing so. * * *

"In other words, the powers of governmental representatives are created, defined and limited by legislation and no act by an agent exceeding his legislatively delegated authority constrains the United States.

"Under the regulations of the Farm Security Administration it is specifically provided that before a

682

mortgagor may find a private purchaser for the incumbered property, he must make written application to the regional office for authority to sell. Collecting officials, such as Sullivan, are empowered only to submit an offer to release a lien upon repayment of the indebtedness. Such offer must be made on a form provided by the Administration. One copy must be sent to the regional office, one kept by the collecting official, and one given the borrower. Nowhere appears any provision authorizing the agent to grant permission to sell mortgaged property or to release the security.

"Since departmental regulations properly adapted to enforcement of a statute have the force of law, Daeuffer-Lieberman Brewing Co. v. United States, 3 Cir., 36 F.2d 568; Sawyer v. United States, 2 Cir., 10 F.2d 416; and it is clear Sullivan acted beyond his official authority, his acts were ineffective to bind the Government."

In the instant case, as in those cited above, the defendant assumed the risk of dealing with a government official who, under appropriate regulations, lacked the authority to act in the matter before him. It is regrettable if the defendant has suffered a hardship because of this. However, as the Supreme Court said in the Merrill case, supra, "The oft-quoted observation in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury."

Therefore, since the County Supervisor did not have actual authority to compromise, adjust, or cancel debts such as the one in the instant case, and he further could not be vested with such power under a theory of implied authority, the Government's motion for summary judgment should be granted. The plaintiff is, therefore, entitled to recover $781.53, plus interest, from date of judgment.

Judgment in accordance with the above is being entered today.