UNITED STATES of America,
Plaintiff,

v.

Howard L. MILLSAP and Violet E. Millsap, Defendants.

Civ. No. 4395.

United States District Court
D. Wyoming.

Sept. 7, 1962.

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., for plaintiff.

G. L. Spence, of Spence, Hill, Oeland & Tschirgi, and Norman V. Johnson, Riverton, Wyo., for defendants.

KERR, Judge.

The United States has moved for judgment in accordance with its prior motion for directed verdict. It now contends that it established a prima facie case by showing that between 1953 and 1955 the defendants (hereinafter referred to as "Millsaps") executed the four promissory notes in issue and that there was an unpaid balance due on said notes. They conceded that they executed the notes in the aggregate amount of $18,-000.00, and that the unpaid balance as of May 24, 1960, is $4,863.36. Millsaps denied, however, that the unpaid balance is due and owing the government. The case was tried before a jury, which returned its verdict in favor of Millsaps. The Court withheld the entry of judgment on the verdict in order to more thoroughly examine the regulations, statutes and decided cases. This has been done.

It is the position of the government that the record contains no evidence that either Millsaps or the officers of the government did what was required of them by the Code of Federal Regulations to effectuate a bona fide settlement, compromise or cancellation of the debt. The government avers that the facts fail to prove as a matter of law that the notes were cancelled, or that any agreements regarding settlement, cancellation or adjustment of the debt were made within the scope of the authority of the employees of the Farmers Home Administration or of the Department of Justice.

Millsaps contend that this litigation involves solely a factual issue. They argue that the government had complete control and supervision over the financial situation of the defendants. They assert that the agents of the government made certain representations to them upon which they relied to their detriment. They conclude that the government is now estopped from asserting any claim or demand against them and that the government is bound by the conduct of its employees and agents.

The jury was instructed that in order to bind the government "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. * * * " Federal Crop Insurance Corp. v. Merrill et al., 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The regulations pertaining to the making or approving compromises, adjustments and to the cancelling of debts due the United States were also read to the jury.

At the close of all the evidence the government moved for a directed verdict, which was denied. Under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., when the Court overrules a motion for directed verdict, it is deemed to have submitted the cause to the jury, conditioned upon the possibility that the Court may at a later date determine whether or not the defendant was legally entitled to judgment. Newton et al. v. Glenn et al., 5 Cir., 149 F.2d 879 (1945), cert. den. 326 U.S. 758, 66 S.Ct. 100, 90 L.Ed. 456.

Mine is not to reason why or speculate how the jury concluded that the agents and employees of the government and the debtors succeeded in cancelling the debt in accordance with the applicable rules and regulations. Mine is to ascertain whether such conclusion is supported by the facts and squared by the law of the case.

The authority of a trial judge to disturb jury verdicts is limited. Kippen v. Jewkes et al., 10 Cir., 258 F.2d 869, 873 (1958); Brodrick v. Derby et al., 10 Cir., 236 F.2d 35, 37 (1956). The

propriety of the government's motion turns on the authority of the employees of the Department of Agriculture and of the Justice Department and whether they conducted themselves within and in accordance with such authority. If the County Supervisor, State Director and United States Attorney did have authority to cancel the debt in the manner alleged by them then it was proper to try the case on its merits and to submit it to the jury. If, on the other hand, such representatives of the government did not have the authority relied upon by Millsaps then the government is entitled to judgment. United States of America v. Swint, D.C., W.D.Ark., 185 F.Supp. 678 (1960).

■ Viewing all the evidence in the light most favorable to Millsaps, and assuming for the purposes of the motion that the facts elicited at the trial are true and undisputed, I am nevertheless persuaded that reasonable minded persons could not possibly draw different conclusions from the evidence. There is but one possible conclusion, namely, that the acts of the agents and employees of the government were not performed in accordance with the controlling rules and regulations and they did not lawfully cancel Millsaps' indebtedness.

They contend that the evidence proved to the jury that the alleged cancellation was effected by novation, set-off, liquidation, compromise, and estoppel. I shall briefly allude to each one of these defenses and illustrate how the evidence forecloses any conclusion that the regulations were adhered to.

■■ They did not prove that the County Committee received or recommended the approval of any application by them for the settlement of their debt as required by 6 C.F.R. Section 364.2 (d). They attempted to prove that the County Supervisor, not the County Committee, agreed to a novation arrangement whereby they would obtain a qualified borrower who would assume their obligations to the government in exchange for a discharge by the govern-

ment of the notes. If this purported assumption agreement were accepted by an agent of the government he did so beyond the bounds of his authority for he did not comply with 6 C.F.R. Section 371.39, which requires the prior approval by the National Office "when it is determined that such action will be to the advantage of the Government and the interested parties". The evidence does not show the requisite determination nor the prior approval by the National Office. Furthermore, Section 371.39 provides that the original borrower is not to be released from liability by an assumption agreement. The jury, therefore, was not warranted in finding that the debt was cancelled by an unauthorized and unapproved novation agreement.

Millsaps claim they were entitled to a set-off or credit which should be credited to their indebtedness to the government. Mr. Millsap testified that the County Supervisor orally agreed to credit his account with approximately $1,625.00 representing the value of hay which they delivered to another farm loan debtor, the time spent on that other debtor's affairs and the pasturing of his cattle, and the amount allegedly due from the sale of some mortgaged property. Mr. Millsap admitted that he has never filed a claim for these alleged credits. They do not urge that these so-called set-offs amounted to a cancellation of their debt. The jury could not find as a matter of fact that the sum of $1,625.00 was supposed to offset the $4,863.36 debt.

■ In their attempt to sustain the burden of their defense that the unpaid balance had been cancelled by an officer or agent of the government, they introduced evidence to show that the County Supervisor of the Farm Home Administration office represented to them that if they would liquidate all their chattels mortgaged by them to the government and apply the proceeds therefrom to their debt that the government would discharge the notes and release the mortgages. They asserted that they did sell the mortgaged chattels and delivered the proceeds to the government in full

discharge of the notes. Section 364.2(g) is unequivocally opposed to any such arrangement. That regulation expressly provides that proceeds realized from the sale of security property "will not be used in making a compromise or adjustment offer." Under this section a debtor may apply for settlement of his remaining indebtedness only after the money received from the sale of secured property has been applied to reduce his indebtedness. Any employee or agent of the government who might have made such a proposition as alleged by defendants acted without any authority to bind the government. Under this posture of the defense there was no question of fact for the jury to weigh and find for the defendants.

■ Millsaps argue that the State Director had authority to cancel their indebtedness. Section 364.11 of 6 C.F.R. authorizes the State Director to approve the compromise, adjustment or cancellation of the debts upon application. There was no evidence to support even an inference that an application for settlement had been made by Millsaps and approved by the State Director. Discussions and negotiations are not acceptable substitutes for the express requirement that an application be submitted to the State Director for his approval.

Section 364.12 of 6 C.F.R., also read to the jury in the Court's instructions, refers to a form "FHA–858" which is to be used by debtors in making application for compromise adjustment or cancellation of debts and on which is to be indicated the approval or rejection by the approving officer. The record is absolutely devoid of any evidence that Form FHA–858 was ever executed or filed by Millsaps in an attempt to compromise, adjust or cancel their debts.

■ Despite their allegations that their debts were cancelled at the local level of the Farmers Home Administration between 1954 and 1957, they nevertheless admitted that there was a balance due and owing on the notes after March 14, 1958, when the government's claim against them was referred to the Depart-

ment of Justice. Thereafter, under 6 C.F.R. Section 364.9, the Justice Department had exclusive jurisdiction and all future negotiations had to be made by and through the United States Attorney's office.

On or about May 13, 1960, they sold their home for $13,500.00, out of which they realized $9,000.00 over and above the mortgage. They placed this $9,-000.00 cash in the safety deposit box in a bank at Lander, Wyoming. Thereafter they made an appointment with the State Director, not with the United States Attorney, to discuss a compromise offer so that their indebtedness would be cancelled. Following this conference, the State Director wrote to the Assistant United States Attorney reporting that Millsaps advised him that they had lost all their real property, that they had no assets and that they suggested $1,000.00 compromise for full settlement of the FHA loans. The State Director considered this offer acceptable and recommended its approval, "provided the application for compromise * * * substantiates Mr. Millsap's statements to us today". Even assuming that Mr. Millsap filed an application for compromise, which fact is not in evidence, and assuming also that his statements to the State Director were true, which the evidence belies, nevertheless, the State Director's opinion and recommendation to the United States Attorney's office were clearly beyond the pale of the regulation and had absolutely no binding or probative effect. Section 364.9 of 6 C.F.R. does not provide for any participation by the State Director after the matter has been referred to the United States Attorney.

■ After the complaint was filed herein on May 24, 1960, and the order of attachment served, Millsaps tendered their financial statement, also dated May 24, 1960, to the Assistant United States Attorney who refused to look at it or accept it. No evidence indicates that an offer of settlement "under the signature of the debtor" was ever made by them to the United States Attorney as required by 6 C.F.R. Section 364.9. They stressed

the fact that they submitted their financial statement. This went to the jury as one of their exhibits and it contains no characteristics of an offer to settle, compromise, adjust, or cancel their debt upon the payment of any proposed sum of money. There is absolutely nothing in the record to substantiate the jury's conclusions that an offer of settlement was tendered by them to the United States Attorney, that it was accepted by the proper officials, and that the debts in issue were thereby cancelled.

They did not show affirmatively, as they are required to do, that they or the agents of the government complied with the regulations. Quite to the contrary. The evidence clearly shows that the parties did not pursue the requisite legal procedures to effectuate a settlement. The record is barren of any evidence authorizing the representatives of the government to cancel their debt in a manner which is not sanctioned by the statute or regulations. United States v. Chickasha Cotton Oil Co., 10 Cir., 115 F.2d 135 (1940). By its verdict in favor of Millsaps the jury clearly revealed that they disregarded the Court's instructions concerning the requirements of the regulations and their binding effect.

There remains to be considered the question of estoppel, which was Millsaps' principal defense. Where, as here, an officer of the government finds his authority to act in the laws and regulations, the public deals with such officer as an agent with known and limited powers. "Once beyond these powers, principles of estoppel or fair dealing have no application against his principal". Dayton Airplane Co. v. U. S., 6 Cir., 21 F.2d 673, 674 (1927). It is well established that the United States Government is not estopped by the unauthorized acts of its agents. United States v. Fitch, 10 Cir., 185 F.2d 471 (1950). The United States Supreme Court has held that " * * * the United States is neither bound nor estopped by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." Utah Power & Light Company v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

They did not allege nor attempt to prove that the government's agents acted within their authority and that all the parties complied with the regulations controlling the compromising and cancelling of debts. There was no conflicting evidence on this issue. The issue of estoppel was, therefore, not properly before the jury. When the facts are undisputed it is a question of law for the court to decide whether the facts constitute an estoppel.

A verdict predicating the existence of estoppel must be set aside unless the facts indicate the presence of all the essential ingredients of an estoppel. In this case the crucial elements of estoppel were missing, namely, the conduct of the officers of the government within the scope of their authority, and the conduct of Millsaps in ignorance of the true limitations of authority of those with whom they were dealing. There was no evidence before the jury tending to disclose these two essential elements.

It is not a defense that either party was ignorant of the regulations and their effect of limiting the authority to cancel indebtedness. Departmental rules and regulations properly promulgated have the force and effect of law and their appearance in the Federal Register is tantamount to legal notice of their contents. 49 Stat. 502, 44 U.S.C.A. § 307; Federal Crop Insurance Corp. v. Merrill et al., 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); United States v. Christensen, D.C., E.D.Ill., 50 F.Supp. 30 (1943).

Based on the analysis of the evidence in this trial and focusing the facts with the applicable principles of law, I find that there was no evidence or inference reasonably and fairly to be drawn therefrom that would permit the jury to find that the requirements of the regulations were complied with resulting

in a legal or valid cancellation of defendants' debt. It is my opinion that there was no issue of fact submitted to the jury upon which reasonable minds could differ with respect to the requirements of the regulations and the conduct of the defendants and governmental agents in conflict therewith. It is my opinion, also, that the principle of estoppel cannot bind the government for the unauthorized acts of its agents which were consistently evidenced in the trial of this case. It is my conclusion, therefore, that there is nothing in the trial of this case that warrants a verdict against the government, the movant herein.

From what I have said, I hold the verdict of the jury should be set aside and judgment entered for the government as prayed for in the complaint. The Clerk will enter order accordingly.