# J. D. DUNNING *et al.*

*v.*

# J. S. MEAD *et al.*

CHATTEL MORTGAGE—*when fraudulent as to creditors.* A chattel mortgage on a stock of goods which authorizes the mortgagor to retain possession and carry on his business by selling and buying goods, is void as to creditors and pur-

chasers of the mortgagor. And though the mortgage is fair on its face, if the mortgagee soon after its execution gives written permission to the mortgagor to sell the goods in the usual course of his business, but to hold the proceeds as agent for him, and such sales are made, it will render the mortgage void as to *bona fide* creditors and purchasers, and the goods will be liable to seizure under a distress warrant for rent due from the mortgagor.

APPEAL from the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

Messrs. BROWN & SOUTHWORTH, for the appellants.

Mr. A. J. HOPKINS, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that in February, 1874, F. W. Moore rented to Eugene Newell a house and lot, as claimed, for one year, for the sum of $225, payable monthly, at $18.75 per month. Newell paid rent, as agreed, for seven months, and up to the 26th of September, but made no more payments. Moore having removed to Iowa, he, in the month of December thereafter, appointed J. D. Dunning his agent, to collect the balance of the rent, and in March, 1875, Dunning collected $25 thereon, and received the keys of the house. In June following, Dunning, as agent of Moore, issued a landlord's warrant to Graves, as bailiff, to distrain for rent to the amount of $70. He distrained the goods in controversy, and the Meads brought replevin for their recovery.

It also appears, that in August, 1874, J. D. Dunning rented to Newell & Walker, for a year, a storehouse, for $420, payable $35 per month, in advance. The south third of the storehouse belonged to J. S. Dunning, who also resided in Iowa, and the other two-thirds to J. D. Dunning, who was the agent of J. S. Dunning; that $15 per month of the rent was for the latter, and $20 per month for the former; that J. D. Dunning's portion of the rent was paid up to July 1, 1875, but no part of J. S. Dunning's was paid. In June, 1875, J. D. Dunning issued for his principal a distress warrant

378          DUNNING *et al. v.* MEAD *et al.*          [Sept. T.

Opinion of the Court.

against Newell & Hodges, the tenants then occupying the premises (Hodges having become a partner of Newell), to Graves, as bailiff, to distrain for $170 rent, then claimed to be due, which warrant was executed by levying on the property in dispute.

It also appears, that Newell & Hodges gave to the Meads a mortgage on their stock of groceries, and tools and implements in their butcher shop, to secure the payment of $815.75, evidenced by notes. The mortgage was in the usual form, providing the mortgagors might retain possession of the goods until the maturity of the debt. It also appears that they continued to sell the groceries and to carry on their butcher shop, as before. They, however, purchased no additions to their stock of groceries. It is claimed that they made no sales until authorized by letter from the mortgagees, who directed them to do so, but to retain the proceeds of the sales, subject to the order of the mortgagees. Newell claims that he held the money, but on cross-examination admits that they used $150 thereof in their meat business.

The jury, on the trial in the court below, found a verdict for the plaintiffs, and after overruling a motion for a new trial, the court rendered a judgment on the verdict, and defendants appeal to this court.

The mortgage, on its face, was regular, and apparently valid and binding as to all persons. But the mortgage bears date the 3d day of June, 1875, and on the next day the mortgagees wrote a letter to the mortgagors, by which they authorize them to continue to sell the mortgaged property at retail, and retain the proceeds, subject to their order. Although the letter is dated at Chicago, and must have been after the return of the agent of the mortgagees to the city, still, following so close on the execution of the mortgage, it has every appearance of being a part of the agreement between the mortgagees and the agent, to be submitted to them for their approval. But whether so or not, this authority rendered the mortgage void as to *bona fide* creditors and purchasers.

It has been repeatedly held by this court, that a mortgage on a stock of goods which authorizes the mortgagor to retain possession and carry on his business by selling and buying goods is void—that it is fraudulent.* And it was held at the present term, in the case of *Greenebaum* v. *Wheeler, ante,* 296, that where, by a separate writing, the mortgagor was authorized to carry on a carriage factory, by working up the material mortgaged and selling the manufactured work, and to be paid $300 per month to pay hands, run the shop, and support his family, the mortgage was void as against creditors. That case, in most of its facts and in principle, is the same as this.

Here, the letter expressly states, that to enable the mortgagors to continue business, they are appointed agents, and authorized to sell; and whilst the mortgage was binding between the parties, it was an effort to evade the law—to do indirectly what they could not do directly—to continue their business—and the transaction was fraudulent as to creditors. The mortgagors seem to have understood it as a mere evasion, as they appropriated $150 to their meat business, nor do they pretend that they reported sales, remitted money to the mortgagees, or that the latter drew on them for any. Appellees, from the instructions they asked, seem to have believed the transaction was fraudulent, as they only assert that the mortgage is binding between the parties, notwithstanding the letter, and the court properly instructed that the mortgage was void as to creditors.

Dunning, the agent, and Graves, the bailiff, both swear that Newell & Hodges admitted that rent was due, and this is not denied; but Newell says, they were notified, by a lawyer in Chicago, to pay no more rent to Dunning, and they did not, but offered to pay it to him if he would indemnify them, but he declined.

It would thus appear, there is scarcely a doubt that there

---

*See *Goodheart* v. *Johnson,* 88 Ill. 58; *Barnet* v. *Fergus,* 51 Ill. 352; *Davis* v. *Ransom,* 18 Ill. 396; *Read* v. *Wilson,* 22 Ill. 377; *Simmons* v. *Jenkins, Admr.* 76 Ill. 479.

was rent due to Moore and J. S. Dunning, or one or the other of them. If rent was due to both or either, no reason is perceived why the distress was not legal and binding, and if so, the finding is against the instructions and the evidence, and for that reason the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*