### RONSON ART METAL WORKS, Inc. v. BROWN & BIGELOW, Inc.

United States District Court
S. D. New York.
April 30, 1952.

Ward, Crosby & Neal, New York City, for plaintiff.

Thomas J. Byrne, New York City, for defendant.

MURPHY, District Judge.

This is a motion by defendant appearing specially to quash service of summons and complaint upon it and to dismiss the complaint. The principal question presented is one of venue: whether plaintiff may bring this action in this judicial district. The complaint alleges two causes of action arising out of alleged infringement by defendant of a patent on a cigarette lighter fuelled by liquefied petroleum gas. The first cause, under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, seeks judgment that defendant's patent is void and not infringed by plaintiff's. The second cause is for infringement by defendant of plaintiff's patent. Plaintiff is a New Jersey corporation and defendant, a Minnesota one.

Because resolution of the question of venue in this action depends upon the character of defendant's activity within and outside this judicial district, an examination of the evidence of such activity in comparative detail might be worthwhile. This evidence is based upon various affidavits: for defendant, from its treasurer and one of its vice-presidents; for plaintiff, from a vice-president, an employee and its counsel. Plaintiff also offers a deposition from defendant's vice-president. Compilation of defendant's activities is shown in margin.[1]

With respect to the question of venue on the first cause of action under the Declaratory Judgment Act, Congress has provided no special directions. The Declaratory Judgment Act, 28 U.S.C.A. § 2201, is silent on this issue, Webster Co. v. Society for Visual Education, 7 Cir., 83 F.2d 47. The applicable statute is the general one on venue found in 28 U.S.C.A. § 1391. Magnetic Eng. & Mfg. Co. v. Dings Magnetic Sep. Co. D.C.S.D.N.Y., 86 F.Supp. 13. So far as it applies here, this section provides:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The statutory test of venue for the first cause of action is then whether the defendant "is doing business" within this judicial district.

### I. Compilation of Defendant's Activities

| Significant Contacts of Defendant | Within This Judicial District | Within Minnesota |
| --- | --- | --- |
| I. Domicile | Not licensed to do business in State of New York. | State of incorporation, general offices and principal place of business. |
| II. Business Activity | | |
| a. Nature | | |
| (1) Manufacturing | Salesmen make suggestions for make-up of printed matter. | Manufacturing plant produces liquified petroleum cigar and cigarette lighters, calendars, greeting cards and advertising specialties. |

| Significant Contacts of Defendant | Within This Judicial District | Within Minnesota |
|---|---|---|

II. Business Activity—Continued

a. Nature—Continued

| | Within This Judicial District | Within Minnesota |
|---|---|---|
| (2) Soliciting orders | At least 44 salesmen employed to call upon trade and solicit orders for Redi-Flame cigarette lighter and other products of defendant subject to acceptance or rejection at home office in St. Paul, Minn. | Defendant's order form provides that orders are subject to acceptance at St. Paul; that they are not subject to countermand; that title to goods passes to buyer at time of completion of manufacture and appropriation by seller of order; that remittances are to be made payable and sent to St. Paul; that salesmen are without authority to collect money or incur any indebtedness on behalf of defendant; that final acceptance of the contract is at St. Paul; and that validity, meaning, enforcement and consequence of a breach of the contract is to be governed by Minnesota law. Goods are shipped by common carrier from St. Paul direct to customer. Customers are billed direct from St. Paul. Payments are made direct to St. Paul. Salesmen receive checks for services on straight-commission basis direct from St. Paul. |
| (3) Credit and adjustments | Sales division acts in advisory capacity on credit and adjustment to home office. Acceptance or rejections of customers' positions or bases of settlement might be communicated through the sales office to the customers where relations are strained "in the interest of maintaining the good will of the customer." | All settlements made by credit department in St. Paul. Complaints received in New York are communicated to St. Paul for settlement. |
| (4) Public relations and advertising | Defendant listed in New York telephone directory. Public relations service for defendant handled by independent agent with office at 50 E. 42nd Street and a listing in the telephone directory under defendant's name. Defendant's name appears on entrance door at 9 E. 40th Street. | Public relation service and telephone directory listing costs paid directly from home office in St. Paul. |

| Significant Contacts of Defendant | Within This Judicial District | Within Minnesota |
| --- | --- | --- |
| II. Business Activity—Continued | | |
| a. Nature—Continued | | |
| (5) Demonstration and supply of merchandise | Defendant furnishes on loan to its salesmen in order to exhibit and presumably demonstrate them to customers cigarette lighters, other products and probably also cartridges for re-fuelling the lighters. Refuelling cartridges and replacement flints are obtainable by customers direct from St. Paul, Minn., although salesmen may have supplied these as a courtesy at sometime or other but without service fee. On one occasion a representative of plaintiff in connection with this action called at defendant's sales office at 9 E. 40th Street, pretending to be interested in purchasing cigarette lighters as souvenirs. Defendant's salesman exhibited a lighter, demonstrated its operation and refuelling, refused to sell it to plaintiff's representative but permitted him to borrow it for a few days and also supplied a price list for such lighters. | Replacement flints and cartridges supplied direct to customers from St. Paul. All lighters stored and shipped from St. Paul. |
| (6) Other selling activity | Two offices comprising about 3000 square feet are regularly maintained, one at 9 E. 40th Street, the other at 42 Broadway in New York, N. Y. In addition, salesmen use an office at 9 E. 40th Street for customers. | Rental for office space paid directly from St. Paul. Leases for such space executed in St. Paul. Expenses and telephone bills in connection with New York operations paid directly from St. Paul. |
| | Non-soliciting personnel at these offices include: at 9 E. 40th Street, a vice-president who is divisional sales supervisor in charge of the Eastern sales division, a district sales manager and two secretaries; at 42 Broadway, a district sales manager and two secretaries. In addition three men are employed on special sales work and operate out of 9 E. 40th Street: one, paid by the home office, is in charge of special orders, e. g., large accounts for calendars of oil companies requiring unusual handling; a second, to assist in recruiting work; and a third as field sales trainer. | Salaries of non-soliciting personnel paid by individual check direct from St. Paul. Sales supervisors are on a drawing account against a percentage of sales without a minimum guarantee. |

| Significant Contacts of Defendant | Within This Judicial District | Within Minnesota |
|---|---|---|
| II. Business Activity—Continued | | |
| a. Nature—Continued | | |
| | Non-soliciting selling activity at these two offices includes: territory alignment; recruiting; sales supervision; customer relations, and whatever is necessary in the course of booking orders. | |
| | In addition the vice-president consults with district managers from areas ranging from southern Connecticut to North Carolina from time to time on sales planning, manpower management and recommendations on hiring and firing salesmen which are sent to the home office for final decision. | Final decisions on hiring and dismissal of personnel made in St. Paul. |
| b. Volume | Orders received from these two offices during 1951 for goods shipped by defendant totalled approximately seven figures in dollars. | |
| c. Continuity | Defendant has maintained continuous contact with the New York market with the above type of organization for the past 25 or 30 years. Their office at 42 Broadway has been there for four or five years. | |

As to the second cause of action based upon the patent laws of the United States for infringement by defendant of the Flamm patent owned by plaintiff, the applicable venue statute is somewhat more specific and provides so far as here relevant, 28 U.S.C.A. § 1400(b):

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

The statutory test for the second cause of action involves both "acts of infringement and * * * a regular and established place of business" within this judicial district.

We shall consider [I] the first cause of action under the test of "doing business," and [II] the second cause under its test, in that order.

### I

■ "Doing business" is a concept which has thus far defied ultimate definition. What has signified doing business for a corporation in a commercial sense has often not been sufficient for certain legal purposes. See 17 Fletcher, Cyclopedia of Corporations 465 (1933); Stevens, Private Corporations 837 (1936); Isaacs, An Analysis of Doing Business, 25 Col.L.Rev. 1018 (1925). The term has frequently been used by legislatures with respect to activities of corporations for various purposes: to determine the basis for exercise of judicial jurisdiction, as it has been used in the instant case; or to determine judicial jurisdiction for effective service of process, which is also involved in this case; or to determine legislative jurisdiction to tax; or to determine whether or not a corporation should register and be subject to corporation statutes of a state other than the one of its incorporation. What constitutes "doing business" for one of these purposes may not be sufficient for another. So, for example, the same corporation which is held to be doing business for service of process may be deemed not doing business under local registration and domestication statutes. State v. Ford Motor Co., 208 S.C.

379, 38 S.E.2d 242. Because connotations of the concept vary with the purpose of its use, some investigation is indicated of the basis of judicial jurisdiction which is the purpose for using "doing business" in the statute involved in this case.

The notion that jurisdiction is synonomous with "the power of a state" to affect various interests (Restatement, Conflict of Laws § 42) has historically caused courts to require the physical presence of a natural person as a basis for the exercise of judicial jurisdiction to render judgments *in personam*, as distinct from the basis required for judgment *in rem*. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. And so even temporary presence of a casual nature has come to be sufficient basis for judgment *in personam* against a natural person consistent with this de facto view of jurisdiction. Restatement, Judgments § 15; Darrah v. Watson, 36 Iowa 116; Peabody v. Hamilton, 106 Mass. 217. Several relaxations of the power concept of jurisdiction in such situations gained rapid and widespread recognition. Domicile might provide sufficient basis for such judgment by a state against its absent resident, Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Restatement, Judgments § 16, and to a less well-defined extent, the tie of allegiance or citizenship might suffice without the one of domicile. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375. But cf. Grubel v. Nassauer, 210 N.Y. 149, 103 N.E. 1113, 52 L.R.A.,N.S., 161. Finally, the mere doing of an act within its boundaries might subject an individual to such jurisdiction of the state without any other relationship to it, at least if the state could prohibit such conduct in the exercise of its police power and thus be deemed to have subjected such individual to its jurisdiction by coercing his implied consent, Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091, or perhaps even in the absence of such power to prohibit and where the absent individual's "act" within the state consists of no more than ownership of real property. Cf. Dubin v. City of Philadelphia, 34 Pa. Dist. & Co. R. 61 [additional materials collected, Cheatham et al., Cases and Materials on Conflicts of Laws (3d ed. 1951)].

But for juristic persons traditional de facto notions of jurisdiction were hardly adequate. An early expression that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," Taney, Ch.J., in Bank of Augusta v. Earle, 13 Pet. 519, 38 U.S. 519 at p. 586, 10 L.Ed. 274, gave rise to one view that jurisdiction *in personam* could be acquired only in the state of incorporation. Middlebrooks v. Springfield Fire Ins. Co., 14 Conn. 301. And the temporary presence of a corporate official within its boundaries could provide a state with no substitute as a basis for such jurisdiction. Goldey v. Morning News of New Haven, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517. Nor would sporadic and occasional activity short of continuous dealing by such an official suffice. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139. And so, unlike natural persons, corporations could not be subjected to *in personam* judgment outside their domicile by either physical presence or the mere doing of an act. But also unlike natural persons whose ingress and egress to and from states is guaranteed as a privilege and immunity of citizens by the Constitution of the United States, "that invisible, intangible and artificial being, that mere legal entity, a corporation aggregate is certainly not a citizen," Marshall, Ch.J., in Bank of United States v. Deveaux, 5 Cranch 61, 9 U.S. 61, at p. 86, 3 L.Ed. 38, and so might, with constitutional impunity, be altogether excluded by a state. Bank of Augusta v. Earle, supra. This peculiar circumstance made possible the construction of a theory of implied consent of a foreign corporation to be subject to the judicial jurisdiction for *in personam* judgment of a state into which its agents had been dispatched to carry on its business, since the power to exclude includes the power to exact certain conditions of entry. Lafayette Insurance Co. v. French, 18 How. 404, 59 U.S. 404, 15 L.Ed. 451. For many years then, *in personam* jurisdiction over a foreign corporation was explained theoretically as activity of its agents abroad either sufficient to imply this fictitious consent, or adequate to find the corporation metaphysically "present." International Harvester Co. v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479. The construction of such jurisprudential framework could be avoided only in situations where express consent was given in advance, cf. Washington v. Superior Court, 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256, and even then controversy over the scope of such consent often called upon the subtleties of implied consent and presence for resolution.

Against this background, defendant contends that it is not doing business within this judicial district so as to provide a basis for an *in personam* judgment of this Court. Defendant denies neither the sufficiency of volume nor the continuous and systematic nature of its activity within the district. But it is insisted that such activity falls short because, viewed from the substantive law of contracts in terms of offer and acceptance, it is incomplete within this judicial district. Salesmen are neither hired nor fired here: the ultimate act takes place in Minnesota. They, and other personnel within this district, are paid from Minnesota. Sales supervisors are not authorized to sign checks on behalf of defendant in this district. Leases for office space are executed and rentals and charges for telephone services paid in Minnesota. Credit and shipment of goods are arranged there. Most important of all, the sale of its goods, considered as a contract, is not complete until the last act of acceptance takes place in Minnesota.

Thus defendant relies upon the rule that solicitation alone, without other activities by agents of a foreign corporation, is not sufficient as a basis for *in personam* jurisdiction. Without pausing to consider whether such rule as originated in Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, would be sufficiently broad for defendant's activity within this district in the instant case, it is doubtful whether "mere solicitation" was ever intended to function as a rigid, mechanical line of delineation between corporate activity that is and such that is not "doing business" for jurisdictional purposes. For one thing, it is almost inconceivable to have sustained selling activity abroad of agents which literally and factually does not go be-

yond solicitation. For another, it is questionable policy to make determination of a matter of private international law, such as jurisdiction, turn exclusively on fine distinctions in the internal law of sales or contracts. And so in International Shoe Co. v. State of Washington, 326 U.S. 310, 316–317, 66 S.Ct. 154, 158, 90 L.Ed. 95, Stone Ch.J., referring to jurisdictional requirements of due process, formulated this test:

"Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

Cursory inspection of the corporate activity set forth above in this case and that involved in the International Shoe case, convincingly confirm that this test has been generously exceeded. As in International Shoe, the defendant here makes no contracts either for sale or purchase of merchandise, maintains no stock of merchandise and makes no deliveries of goods in intrastate commerce within this judicial district. As in that case, defendant here employs salesmen whose commissions are based upon the amount of their sales and who are supplied with a line of samples which they display to prospective purchasers. Similarly the authority of the salesmen is limited to exhibiting their samples and soliciting orders from prospective buyers at prices and on terms fixed by defendant. The salesmen, here as in that case, transmit the orders to defendant's office outside the jurisdiction for acceptance or rejection, and when accepted the merchandise for filling the orders is shipped directly from outside the jurisdiction to purchasers within it. Like the activity in International Shoe, all merchandise shipped into the jurisdiction is invoiced at the place of shipment from which collections are made and no salesman has authority to enter into contracts or to make collections.

But beyond the situation in the International Shoe case, defendant maintains two offices here against none in that case, employs about four times as many salesmen whose volume of sales and commissions in dollars is many times greater and whose activities are under direct supervision and control by sales managers located within the jurisdiction, rather than at the home office outside it.

Although this case is stronger upon comparison than International Shoe for sustaining jurisdiction, it is only fair to point out that the purpose of determining the question of jurisdiction there was to meet the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution, and, not as here, to satisfy the demands of "doing business" under a general venue statute of Congress. In Kilpatrick v. Texas & P. Ry. Co., D.C.S. D.N.Y., 72 F.Supp. 635, the question of jurisdiction turned on the test of "doing business" under the venue provisions of the Federal Employers' Liability Act, §§ 1–10, § 6, 45 U.S.C.A. §§ 51–60, § 56. The District Court held that continuous solicitation of freight and passenger business by a railroad in New York was not "doing business" within the statutory test. In doing so that Court ignored the International Shoe decision and relied upon Green v. Chicago, B. & Q. R. Co., supra, which the Court supposed "has never been overruled, either expressly or impliedly * * *." 72 F.Supp. at page 638. The Circuit Court of Appeals said after citing the International Shoe case: "It follows that the judge was wrong to dismiss the action, even upon the defendant's affidavits, for the continuous solicitation of business was itself 'doing business' under § 6." 2 Cir., 166 F.2d 788 at page 792, certiorari denied 335 U.S. 814, 69 S. Ct. 32, 93 L.Ed. 369. See also Lasky v. Norfolk & W. Ry. Co., 6 Cir., 157 F.2d 674; notes, 16 U. of Chicago L. Rev. 523 (1949), 59 Yale L.J. 737 (1950).

There remains consideration of the " 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business". International Shoe Co. v. State of Washington, supra, 326 U.S. at page 317,

66 S.Ct. at page 158, 90 L.Ed. 95, or, as phrased by L. Hand, J. in Kilpatrick v. Texas & P. Ry. Co., supra, 166 F.2d at pp. 790, 791, "the court must balance the conflicting interests involved: i. e., whether the gain to the plaintiff in retaining the action where it was, outweighed the burden imposed upon the defendant; or vice versa. That question is certainly indistinguishable from the issue of 'forum non conveniens' ". In balancing these conveniences, it should be noted that the activities of defendant within this judicial district go far beyond continuous and systematic solicitation. Its vice-president in charge of its eastern sales division, embracing states from Connecticut to North Carolina, has his headquarters within this district and performs here such executive functions as supervision of district sales managers, territory alignment, sales planning, manpower management and recommendations on hiring and firing salesmen which are sent to the home office for final disposition. Other salaried personnel of defendant handling special sales, recruiting of personnel and field sales training operate from within this district. A display room for defendent's goods is maintained here. Custòmers' complaints and requests for adjustment are forwarded through the offices in this district. And salesmen in this district make suggestions in consultation with customers on the make-up of printed matter produced in Minnesota. While this last activity and portions of some of the others relate to goods other than the cigarette lighter involved in this cause of action, it is now clear that such distinction is no longer controlling as it once was intimated to be. In Perkins v. Benguet Mining Co., 342 U.S. 437, 446, 72 S.Ct. 413, 418, the Supreme Court said:

> "The instant case takes us one step further to a proceeding *in personam* to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in International Shoe Co. v. Washington, * *."

In view of the sustained and systematic activity of defendant, both of a soliciting and non-soliciting nature, in this judicial district, coupled with an absence of showing less inconvenience in determining these issues either at plaintiff's domicile in New Jersey or defendant's in Minnesota than in New York, the question of balance of convenience should be resolved against defendant at this stage of the proceeding without however foreclosing determination for request to transfer the action elsewhere which defendant may make subsequently. See 28 U.S.C.A. § 1406(a). It is thus held that defendant's activity within this judicial district is sufficient as a basis for the exercise of *in personam* judicial jurisdiction over it under the test of "doing business" provided in the general venue statute. 28 U.S.C.A. § 1391(c).

In view of this resolution, it is also held that the means of notice employed for perfecting this basis of jurisdiction by service upon defendant's vice-president within this judicial district is also sufficient. See Federal Rules of Civil Procedure, rule 4(d) (3), 28 U.S.C.A.

## II

The second cause of action poses the same question of sufficiency of the basis for the exercise of judicial jurisdiction *in personam* over defendant but under a different statutory test, viz., "acts of infringement and * * * a regular and established place of business" within this judicial district. 28 U.S.C.A. § 1400(b). Without laboring the point, it is enough to point out that the activity held to amount to "doing business" under *I* supra, is upon mere inspection sufficient to support "a regular and established place of business" of defendant within this judicial district. Having disposed also of the question of adequacy of service, the only issue remaining is whether defendant committed "acts of infringement" within this judicial district. The legislative direction looks to plurality and continuity of conduct. The courts say that such acts may be established by proof, disjunctively, of manufacture, sale or use.

See Federal Elec. Prod. Co. v. Frank Adam Elec. Co., D.C.S.D.N.Y., 100 F.Supp. 8, 11. And plaintiff urges that this test is met by "use" of the cigarette lighters within this judicial district. The ultimate question is whether a patent infringement suit may lawfully be maintained in a judicial district in which there is neither domicile of either party nor manufacture of the allegedly infringing product, and the activity of defendant—although including soliciting of sales, exhibition and demonstration of such product in a continuous and systematic manner—falls short of a consummated contract of sale.

We think such action may be maintained. The purpose of Congress in using the test "acts of infringement" is no different from its purpose in using "doing business", viz. as a basis for the exercise of *in personam* judicial jurisdiction and not for purposes of the substantive internal law of patents. Certainly it cannot be asserted that Congress intended that "acts of infringement" as a jurisdictional requirement be met with the same sufficiency as acts of infringement for determination of such issues of fact on the merits at trial. If Congress did, then a disposition of the jurisdictional question would also be one on the merits whenever jurisdiction was sustained.

In the light of defendant's continuous and systematic activity in this judicial district with respect to the allegedly infringing product as well as an appraisal of the inconveniences which would result to the corporation from a trial away from its "home", it is difficult to say that defendant has not used such product here when it systematically supplies its salesmen in this district with its cigarette lighter for exhibition and demonstration to customers. It is true that such exhibition and demonstration may consist simply of depressing a lever with the thumb to create the magic flame and then of releasing the same lever to make it disappear, or to remove a screw from the bottom and insert a cylinder of liquefied gas to dissipate the mysteries of its refuelling. But there is no requirement for "use" that the Augean stables be cleaned. Where no more complete use is possible, such demonstrations should suffice

for acts of infringement for purposes of providing a basis for judicial jurisdiction. See Scott & Williams v. Hemphill Co., D.C. S.D.N.Y, 14 F.Supp. 621, 622. This is so when such acts are coupled with systematic and continuous soliciting and other selling activity within the judicial district, set forth in comparative chart, supra. While such activity may not amount to a consummated "sale" within the internal law of sales or contracts, the practice of having orders taken in one district subject to acceptance or rejection in another, has perhaps enjoyed more magical significance for jurisdictional purposes than it often deserves. How many of such orders, for example in the instant case, solicited in New York, have been rejected in Minnesota in proportion to the number taken in New York and automatically accepted in Minnesota, has not been shown by defendant. And it is difficult to understand why questions of conflict-of-laws, such as jurisdiction, should depend exclusively for determination upon the subtleties of the internal substantive law of sales or contracts.

Defendant's motion to dismiss the complaint is denied.