Martin GARBE, Trustee in Bankruptcy of the Mattoon City Drug, Inc., a Bankrupt, Plaintiff,

v.

HUMISTON–KEELING AND COMPANY, Inc., a Corporation, Defendant.

Civ. No. 1393–D.

United States District Court
E. D. Illinois.

Aug. 16, 1956.

Ralph E. Suddes, Mattoon, Ill., for plaintiff.

Rose, Burt & Pierce, Chicago, Ill., for defendant.

PLATT, Chief Judge.

Martin Garbe, Trustee in Bankruptcy of the Mattoon City Drug, Inc., brings this action under Section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b, to recover an alleged preferential transfer of practically all of the assets of the bankrupt to the defendant, Humiston-Keeling Company, Inc., a corporation.

The essential facts are undisputed. The bankrupt conducted a drug store in the city of Mattoon, Coles County, Illinois. The registered office of the corporation, as shown by its charter, was in the city of Canton, Fulton County, Illinois. The office of the corporation was maintained by the registered agent, Bernard G. Maxwell, the president of the corporation. The books and records of the bankrupt were kept under the supervision of Bernard G. Maxwell, at the office in Canton, Illinois. The defendant, a duly incorporated Illinois Corporation with its office and warehouse in Chicago, Illinois, employed salesmen, some of whom resided in the Eastern District of Illinois, who called upon drug stores throughout the State of Illinois and other states for the purpose of receiving orders for the sale of its merchandise. The orders obtained were delivered personally, by mail, or by telephone to the office of the defendant in Chicago, Illinois, where they were approved and filled. Payment for the merchandise was made to the Chicago office where the books, records and accounts were kept. In November, 1955, when this suit was filed, the total sales of defendant were $1,200,000, of which $47,350, or 4%, were to drug stores in the Eastern District of Illinois. On February 1, 1954, the bankrupt was indebted to the defendant for merchandise on an open account in the amount of $10,072.49 and balance due on a note in the amount of $5,495.98. On March 1, 1954, Mr. Maxwell and his wife were called to the Chicago office where they executed for the corporation a note for $16,696.09 secured by chattel mortgage covering all of the stock and fixtures in the drug store at Mattoon, Illinois. The

note was also signed by the Maxwells individually. The defendant paid $1,915.31 which was due on three fixtures sold to the bankrupt on conditional sales contracts and this amount was included in the mortgage note. After May 1, 1954, the defendant sold merchandise to the bankrupt on a cash basis. The bankrupt became delinquent on other accounts and did not pay promptly the installments on the note secured by the chattel mortgage. The June installment was not paid. May 27, 1954, the defendant received the bankrupt's check for $1,731.06 which was returned by the bank for insufficient funds. On July 6, 1954, the defendant took possession of the bankrupt's drug store in Mattoon, Illinois. July 9, 1954 the Mattoon City Drug Company filed a voluntary petition in bankruptcy and was adjudged a bankrupt. The schedules filed by the bankrupt disclosed assets in the amount of $35,260.31 and liabilities in the amount of $39,060.15. The value of the stock was scheduled at $19,850 and fixtures at $15,000. The trustee in bankruptcy filed a petition in the bankruptcy court requesting that an order be entered directing the defendant to turn over to the trustee the personal property which it had in its possession. The defendant objected to the summary jurisdiction of the referee to allow the petition on its merits. The petition was dismissed by the referee for want of jurisdiction. However, the referee ordered the sale postponed to permit a more complete advertisement of the sale. The sale was widely advertised and the property was sold as a unit at public sale, to the highest bidder for the amount of $14,000.

The defendant presents the following defenses to the claim of the trustee in bankruptcy:

(1) That this court does not represent proper venue for this action.

(2) That the mortgage was valid and properly recorded.

(3) That the consideration for the transfer was not wholly antecedent.

(4) There is no evidence that the Mattoon City Drug, Inc. was insolvent at the time the defendant took possession; and the defendant did not have reasonable cause to believe debtor was insolvent.

(5) That the trustee is barred by the proceeding before the referee in bankruptcy which is res judicata of this action.

█ This court finds that it has proper venue under 28 U.S.C.A. § 1391(c), (1948 Revision), which provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The defendant, being an Illinois Corporation, although its office and warehouse are in Chicago, in the Northern District of Illinois, is certainly licensed to do business in the Eastern District of Illinois. Barron and Holtzoff, Federal Practice and Procedure, Rules Ed., vol. 1, sec. 80, p. 154, express it:

"Congress took the next long step by enacting into law the provision that 'a corporation may be sued in any judicial district in which it is incorporated or licensed to do business * * *.' Presumably, if the state of incorporation has more than one district a corporation may be sued in any district thereof, on the theory that it is 'licensed to do business' throughout the whole state. Previously the rule in such cases was that the corporation would be deemed a resident only of the district wherein it kept its principal office and transacted its general corporate business."

If the defendant corporation was a nonresident, it could be sued in the Eastern District of Illinois had it been licensed to do business in Illinois. Ronson Art Metal Works v. Brown & Bigelow, Inc., D.C., 104 F.Supp. 716, 724, affirmed 2 Cir., 199 F.2d 760; Hadden v. Barrow,

Wade, Guthrie & Co., D.C., 105 F.Supp. 530; Wagner Mfg. v. Cutler-Hammer, Inc., D.C., 84 F.Supp. 211. There is no reason why a different rule on venue should apply to an Illinois Corporation which is qualified to do business any place in Illinois than to a foreign corporation which is licensed to do business in Illinois. The defendant corporation solicited a substantial amount of its business in the Eastern District of Illinois, and again it would come within the venue section 1391(c). Riverbank Laboratories v. Hardwood Products Corp., 350 U.S. 1003, 76 S.Ct. 648, reversing 7 Cir., 220 F.2d 465. The logical conclusion is that this court has jurisdiction of the parties.

■ The *defendant's chattel mortgage* in the first place was obviously invalid as to the stock in trade. The stock was left in the possession of the bankrupt to be used in the usual course of business, and the mortgage cannot be valid against the trustee in bankruptcy, who represents the creditors. Deering & Co. v. Washburn, 141 Ill. 153, 29 N.E. 558; Huschle v. Morris, 131 Ill. 587, 23 N.E. 643; Dunning v. Mead, 90 Ill. 376. The defendant in its answer to the complaint practically admits this in the fifth defense wherein it stated:

"Defendant alleges that the chattel mortgage if invalid was invalid only as to stock in trade * * *."

■ Furthermore, the chattel mortgage was unenforceable against creditors for the reason that it was not properly recorded. The validity of the chattel mortgage must be determined in accordance with the Illinois Statute. Ch. 95, Mortgages, sec. 4, 1953 (Which is applicable here) provides in part:

"No mortgage * * * of personal property * * * shall be valid as against the creditors of the mortgagor * * * unless it shall be deposited for filing or recording in the office of the recorder of deeds of the proper county or counties within 15 days of its execution * * *. Such mortgage

* * * shall be filed or recorded with the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and * * * a certified copy thereof shall be filed with the recorder of the county where the personal property is then situated, * * * and shall thereupon if bona fide, be good and valid from the time it is received for filing or recording * * *."

The defendant recorded the chattel mortgage in Coles County, Ilinois, where the personal property was situated in the possession of the bankrupt, but failed to record it in Fulton County, Illinois, where the registered office of the bankrupt corporation was located and the books and records of the corporation were kept.

"The right given by a chattel mortgage, where possession is not taken by the mortgagee, is in derogation of the common law, and the person claiming under it must show that it has the necessary elements to establish the right. (Citing cases.)

"Recording in the proper county * * * is as essential to the validity of such a mortgage as any other element entering into its making. Blatchford v. Boyden, 122 Ill. 657, 13 N.E. 801." Second National Bank v. Thuet, 124 Ill. App. 501, 504, 505.

Prior to the 1953 amendment a chattel mortgage was required to be recorded in the county "in which the mortgagor shall reside at the time when the instrument is executed and recorded, * *." In 1953 said section 4 chapter 95, Ill.Rev. Stat. was amended by the legislature adding the requirement that a certified copy be recorded in the "county where the personal property is then situated". In Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841, the Supreme Court held that the principal office of a corporation, as shown by its charter, determined the county of residence where the chattel mortgage is to be recorded. In 1933 the Illinois Leg-

islature amended the Corporation Act to require that the Articles of Incorporation set forth the location of the registered office of the corporation instead of the principal office. S.H.A., ch. 32, § 157.47 and the Historical Note. Sec. 157.2(n) provides "'Registered office' means that office maintained by the corporation in this State, the address of which is on file in the office of the Secretary of State." Sec. 157.11 provides "Each corporation shall have and continuously maintain in this State: (a) A registered office which may be, but need not be, the same as its place of business." Thus the legislature made a requirement that a corporation maintain a registered office which would be continuously a public record with the Secretary of State. In the instant case, as pointed out by the defendant, the question presented is whether the recording of the mortgage in Coles County, Illinois, where the property was situated was sufficient in itself, and did not require the recording in Fulton County, Illinois, where the registered office was located. In Fairbanks Steam Shovel Co. v. Wills, supra, the court reviewed the Illinois cases including Chicago, D. & V. R. Co. v. Bank of North America, 82 Ill. 493, cited by the defendant in its brief, and approved Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853, 854:

> "'A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws.'"
240 U.S. 642, 647, 36 S.Ct. 466, 468.

Although the Corporation Act was amended to require the Articles of Incorporation to state the registered office instead of the principal office it did not thereby change the residence of the corporation. A corporation might do business in several locations in various counties. Our seventh circuit stated In re National Mills, 133 F.2d 604, 605:

> "There is also a dearth of Illinois authorities as to what constitutes the residence of a corporation within the meaning of this Section, but it was held in Fairbanks Steam Shovel Co. v. Wills, * * * as being the place designated as its principal place of business in its Articles of Incorporation. While the court was construing the former Corporation Act of Illinois, there appears no reason why the Chattel Mortgage Act in this respect should be construed differently since the enactment of the present Corporation Act. * * * For the purpose of the instant case, we shall so assume."

Illinois Law and Practice, vol. 13, ch. 4, sec. 68, p. 313 sets forth:

> "Although under prior law a business corporation was considered a resident of the county in which it had its principal office, under S.H.A. ch. 32, sec. 157.11, a business corporation is considered a resident of the county in which it maintains a registered office."

When the legislature amended ch. 95, sec. 4, in 1953, it provided that the chattel mortgage should be recorded in the county where the personal property was located in addition to the county in which the mortgagor resides. The legislature evidently recognized that the residence of a corporation or an individual might be in a county other than where the property was located, and to protect creditors and give notice it should be recorded in such an instance in two places. It must be assumed that the legislature had knowledge of the Corporation Act providing for a "registered office". It must be concluded that the creditors of the bankrupt, other than the defendant, would only be put on notice if the chattel mortgage was recorded in accordance with the statute. The defendant failed to record the mortgage in Fulton County, Illinois, the residence of the bankrupt corporation and it is therefore invalid as against the trustee in bankruptcy. See Barnes v. Lynn, 2 Cir., 221 F.2d 955.

The defendant attempts to take advantage of the representation of the bankrupt's residence set forth in the mortgage,

"Mattoon City Drug, Inc. of the city of Mattoon, in the county of Coles, State of Illinois, hereinafter called the mortgagor * * *."

The defendant was dealing with the bankrupt for a period of time. It had the opportunity to determine where the registered office of the bankrupt was located. It had communicated with Mr. Maxwell, the president, at its office in Canton, Illinois, to obtain the mortgage. The defendant prepared the chattel mortgage and should not be permitted to take advantage of its own mistake.

■ A preferential transfer occurred July 6, 1954 when the defendant took possession of all of the stock and fixtures of the bankrupt. The court finds that all of the elements of a voidable preference appear as specified in sec. 60 of the Bankruptcy Act, 11 U.S.C.A. § 96: (1) It was for an antecedent debt; (2) made by an insolvent debtor; (3) within four months of bankruptcy; (4) resulted in an advantage to the creditor, the defendant; and (5) the defendant had reasonable cause to believe that the bankrupt was insolvent when it took possession.

■ The defendant contends that the transfer was not wholly for an antecedent debt. Its theory is because it paid off $1,915.31 on conditional sales contracts in March, 1954 that this should be considered a present consideration. This would have been applicable had the chattel mortgage been properly recorded and the bankruptcy had occurred within four months. But where the preferential transfer occurred July 6, 1954 and the bankruptcy petition was filed July 9, 1954, the advancing of the money to pay off the conditional sales contract is an antecedent debt. Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96; See Corn Exchange Nat. Bank & Trust Co., Philadelphia v. Klauder, 318 U.S. 434, 437, 63 S.Ct. 679, 87 L.Ed. 884.

■ The possession was obtained by the defendant from an insolvent debtor. The schedules filed by the bankrupt on July 9, 1954 disclose that it did not have sufficient assets to pay its debts. Included in the assets were the stock and fixtures valued at $34,850. The stock and fixtures were sold at public sale for $14,000 on August 2, 1954 after being widely advertised. The bankrupt came within the definition of insolvency on July 6, 1954.

"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, * * * shall not at a fair valuation be sufficient in amount to pay his debts". 11 U.S.C.A. ch. 1, § 1(19).

Adler v. Greenfield, 2 Cir., 83 F.2d 955; Irving Trust Co. v. Roth, D.C., 48 F.2d 345; In re Studebaker Corporation, D.C., 9 F.Supp. 426.

The third and fourth elements of a preference need no discussion. The transfer occurred on July 6, 1954 which was within four days of the bankruptcy. The defendant, as against creditors, obtained no rights under the chattel mortgage executed and recorded improperly in March, 1954. If the defendant is permitted to retain the $14,000 it would clearly enjoy a decided advantage over other creditors. Canright v. General Finance Corporation, 7 Cir., 123 F.2d 98.

■ The defendant insists that it did not have reasonable cause to believe that the debtor was insolvent when it took possession. Plaintiff was paying cash for all deliveries of stock and the defendant had knowledge. The defendant's credit manager demanded but did not receive the payments as required by the note secured by the chattel mortgage. On May 27, 1954, the defendant received a check from the bankrupt which was returned by the bank for insufficient funds. The defendant's officers had financial reports on the bankrupt but did not remember what these reports stated. Although financial reports were available they were ignored.

"A creditor who obtains security for a previously unsecured indebtedness must surrender the same at the suit of the trustee, if procured within four months prior to bankruptcy, under such facts and circumstances as would cause a reasonably prudent man to believe the bankrupt insolvent when it was made. He may not close his eyes to known or obvious facts or to anything which he would ascertain by making the inquiry of a reasonably prudent business man. [Citing cases.]" In Re Cox, 7 Cir., 132 F.2d 881, 882.

Also Irving Trust Co. v. Roth, D.C., 48 F.2d 345; Boston Nat. Bank v. Early, 1 Cir., 17 F.2d 691. Furthermore, the defendant took possession of the entire stock and fixtures of the bankrupt and such a transaction cast upon the defendant the burden of acquainting itself with the fact as to whether or not the debtor was insolvent. McElvain v. Hardesty, 8 Cir., 169 F. 31; Rockmore v. Weiner, 2 Cir., 131 F.2d 595; Bronner v. Safinna, D.C., 25 F.Supp. 791.

The last contention of the defendant is that the referee in bankruptcy by extending the time for the sale of the property covered by the chattel mortgage entered an order which is res judicata in this suit. The parties stipulated that the relevant records of the bankruptcy court were to be considered in evidence. The trustee in bankruptcy filed a petition before the referee in bankruptcy to compel the defendant to turn over to the trustee the stock and fixtures. The defendant objected to the jurisdiction of the referee in bankruptcy on this petition. In view of the order of July 23, 1954, wherein the referee in bankruptcy found that he did not have jurisdiction to dispose of the petition for turnover order on its merits, it is conclusive that the stay order on the sale was not res judicata. Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97; B. F. Avery & Sons Co. v. Davis, 5 Cir., 192 F.2d 255, certiorari denied 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703; In re Feynman, 2 Cir., 77 F.2d 320.

The plaintiff may set aside the preference obtained by the defendant and recover the $14,000 received by the sale. The sale was properly advertised and the property was sold at public auction. The trustee is therefore limited to that amount, plus interest from November 2, 1955 the date of the filing of the suit. Larkin v. Welch, 7 Cir., 86 F.2d 442, certiorari denied 300 U.S. 680, 57 S.Ct. 671, 81 L.Ed. 884.

This opinion may be considered as findings of fact and conclusions of law. Final order may be submitted.