Carmie R. JACOBSON

v.

INDIANAPOLIS POWER & LIGHT COMPANY, a Corporation, and Smith & Johnson, Inc., a Corporation.

Civ. No. 2211.

United States District Court
N. D. Indiana,
Hammond Division.

June 19, 1958.

Norman Peters and John G. Phillips, Chicago, Ill., William F. Carroll, Crown Point, Ind., for plaintiff.

Travis, Tinkham & Singleton, Hammond, Ind., Ross, McCord, Ice & Miller, Indianapolis, Ind., for defendant.

SWYGERT, Chief Judge.

This cause is before the Court on the combined motion of the defendants, Indianapolis Power & Light Company and Smith & Johnson, Inc. The motion herein considered asserts that venue is improperly laid in the Northern District

and seek as relief (a) dismissal or (b) transfer of the cause to the Southern District of Indiana, Indianapolis Division.

Plaintiff, an Illinois citizen, brought this action based on diversity of citizenship against two Indiana corporations. In his complaint plaintiff alleges that the negligent conduct of the defendants caused an accident in which he sustained injuries. The accident occurred in the Southern District of Indiana.

Venue in an action of this sort is governed by the provisions of § 1391(c), Title 28 U.S.C. which reads as follows:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

In Garbe v. Humiston-Keeling & Co., D.C.E.D.Ill.1956, 143 F.Supp. 776, the court in discussing § 1391(c) held that a domestic corporation could be sued in any federal district in the state of its incorporation on the theory that it is "licensed to do business" throughout the whole state.[1] I am not in agreement. If such were the purport of the phrase "li-

censed to do business", the earlier phrase in § 1391(c) allowing actions against a corporation in any judicial district in which "it is incorporated" would be redundant and meaningless.

In the opinion of this Court, the phrase "licensed to do business" pertains to the action of a foreign corporation in complying with the rules and regulations of a state other than that under whose laws it receives its corporate existence in order that it may have the privilege of transacting business in that state. This phrase connotes the receipt from the host state of something tangible, a license, certificate, or permit, which evidences a compliance with the laws of that state. The phrase has no application to the issue here presented for the defendants are domestic corporations whose existence and power to transact business in this state are governed not by license but by the provisions of their corporate charters.

The phrase "is doing business" is also inapplicable to the facts of this case. It is undisputed that each defendant maintains its principal place of business at Indianapolis in the Southern District of Indiana. Furthermore, it is un-

---

1. In the Garbe case, the court's ruling was supported by a further finding that the defendant was doing business in the Eastern District of Illinois. In its opinion, the court said at pages 778, 779:

"The defendant, being an Illinois Corporation, although its office and warehouse are in Chicago, in the Northern District of Illinois, is certainly licensed to do business in the Eastern District of Illinois. Barron and Holtzoff, Federal Practice and Procedure, Rules Ed., vol. 1, sec. 80, p. 154, express it:

" 'Congress took the next long step by enacting into law the provision that "a corporation may be sued in any judicial district in which it is incorporated or licensed to do business * * * ." Presumably, if the state of incorporation has more than one district a corporation may be sued in any district thereof, on the theory that it is "licensed to do business" throughout the whole state. Previously the rule in such cases was that the corporation would be deemed a resident only of the district wherein it

kept its principal office and transacted its general corporate business.'
If the defendant corporation was a nonresident, it could be sued in the Eastern District of Illinois had it been licensed to do business in Illinois. Ronson Art Metal Works v. Brown & Bigelow, Inc., D.C., 104 F.Supp. 716, 724, affirmed 2 Cir., 199 F.2d 760; Hadden v. Barrow, Wade, Guthrie & Co., D.C., 105 F.Supp. 530; Wagner Mfg. Co. v. Cutler-Hammer, Inc., D.C., 84 F.Supp. 211. There is no reason why a different rule on venue should apply to an Illinois Corporation which is qualified to do business any place in Illinois than to a foreign corporation which is licensed to do business in Illinois. The defendant corporation solicited a substantial amount of its business in the Eastern District of Illinois, and again it would come within the venue section 1391(c). Riverbank Laboratories v. Hardwood Products Corp., 350 U.S. 1003, 76 S.Ct. 648 [100 L.Ed. 866], reversing 7 Cir., 220 F.2d 465. The logical conclusion is that this court has jurisdiction of the parties.".

disputed that neither defendant has any property, subplants, offices, officers, employees, agents or other personnel, or telephone listings in the Northern District and that neither defendant does business in this district.

It must be added that, because of these undisputed facts, the Court is not called upon to decide whether the phrase "is doing business" is merely an extension of the rule laid down in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 165, 84 L.Ed. 167, so as to include within the venue provisions of the statute corporations doing business in a foreign state which are not licensed therein and have not appointed a statutory agent[2] or whether it is also applicable to domestic corporations chartered in a multi-district state under circumstances where the corporation is doing business in the district where the suit is filed but has its principal place of business or "is incorporated" in another district within the state.[3]

If venue is properly laid in the Northern District of Indiana, its statutory support must be found in the phrase "any judicial district in which it is incorporated." The issue presented therefore is whether, in a suit against a domestic corporation organized under the laws of a state having more than one federal judicial district, the corporation is to be considered incorporated in all of such districts for venue purposes.

Prior to the revision of the Judicial Code in 1948, the controlling venue statute[4] provided that suits under federal laws must be brought in the district whereof the defendant was an inhabitant, and, in diversity cases, in the district in which either plaintiff or defendant resided. In interpreting the former statute, the Supreme Court held in Shaw v. Quincy Mining Co., 1892, 145 U.S. 444,

12 S.Ct. 935, 36 L.Ed. 768, that a corporation, incorporated in one state only, could not be compelled to defend a suit in a United States Court located in a second state in which it had a usual place of business if the plaintiff were not a resident of that second state. The Court stated the localities in which venue was properly laid against a corporation and, in doing so, used language indicating that a corporation "is incorporated" not only in a state but also in a district within that state:

> "In the case of a corporation, the reasons are, to say the least, quite as strong for holding that it can sue and be sued only in the state and *district in which it has been incorporated,* or in the state of which the other party is a citizen." 145 U.S. at page 449, 12 S.Ct. at page 937, emphasis added.

Two years later in Galveston, H. & S. A. R. Co. v. Gonzales, 1894, 151 U.S. 496, 14 S.Ct. 401, 38 L.Ed. 248, the Supreme Court held that a domestic corporation, incorporated under the laws of a state divided into more than one federal district, is, for the purpose of bringing and defending actions in the federal courts of that state, a resident and inhabitant of that district in the state within which the general business of the corporation is done, and within which it has its headquarters or principal place of business even though it does business and maintains offices in other districts within the state.

In the Gonzales case, the court expressed its opinion in these words:

> " * * * In the case of a corporation, the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept

---

2. Cf.: Ruth v. Eagle-Picher Co., 10 Cir., 225 F.2d 572, 577; Remington-Rand, Inc., v. Knapp-Monarch Co., D.C., 139 F. Supp. 613, 616, 617.

3. Cf.: Garbe v. Humiston-Keeling & Co., D.C., 143 F.Supp. 776; Hintz v. Aus-

tenal Laboratries, D.C., 105 F.Supp. 187.

4. 25 Stat. 433 (1888), 28 U.S.C. § 112 (1927).

and its corporate business is transacted, even though it may transact its most important business in another place. * * * [I]f the corporation be created by the laws of a state in which there are two judicial districts, it should be considered an inhabitant of that district in which its general offices are situated, and in which its general business, as distinguished from its local business, is done." 151 U.S. at page 504, 14 S.Ct. at page 404.

Prior to the 1948 revisions of the Judicial Code, the Gonzales case unquestionably was controlling on the issue of proper corporate venue. See Suttle v. Reich Bros. Const. Co., 1948, 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614, and cases cited therein; London v. Norfolk & W. Ry. Co., 4 Cir., 1940, 111 F.2d 127; Eastman Kodak Co. v. Boyce Motor Lines, Inc., D.C.S.D.N.Y.1947, 74 F.Supp. 981; and cases collected in 35 C.J.S. Federal Courts § 21, pp. 822, 823.

The plaintiff agrees that such was the settled law prior to the revision of the Judicial Code in 1948. However, he argues that the effect of the revision was to broaden the concept of venue. The Gonzales case, argues plaintiff, turned on the phrase in the prior venue statute which laid venue against a defendant in the district " 'whereof he is an inhabitant' ". Because the court drew an analogy to the inhabitancy of individuals and accordingly equated the corporation's principal place of business with the individual's dwelling place, the plaintiff maintains that this case loses its effect under the revised code which has specific provisions for corporate venue. He contends that the limits of a corporation's existence are defined by the boundaries of the state under whose laws it is chartered and that a corporation therefore exists and is present throughout the length and breadth of that state. From this premise, he concludes that, in a state having more than one federal district, each such district is one in which a domestic corporation "is incorporated" and hence, a proper situs for laying

venue. In short, plaintiff contends that § 1391(c) should be read:

"A corporation may be sued in any judicial district [in the state] in which it is incorporated * * *."

A literal reading of the language used in the statute renders plaintiff's interpretation plausible. I believe, however, it can be argued with equal force from the wording of the statute that Congress intended the phrase "in which it is incorporated" to refer to but a single district. When a statute passed by Congress is susceptible of more than one interpretation, the court is faced with the necessity of attempting to determine the intention of Congress in enacting the law. Thus, in the instant situation, the Court must decide whether, by the use of the phrase "in any judicial district in which it is incorporated" in § 1391(c) of the revised code, Congress intended to effect a substantial change in the law or whether its intention was merely to restate the existing law.

In Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786, the Supreme Court faced a similar problem when it dealt with the effect of the congressional revision of the Judicial Code on corporate venue. While the court in that case was specifically concerned with venue in patent infringement cases, it expressed views about the effect of the revision of the Judicial Code which are applicable to this case.

In the Fourco case, the Supreme Court held that its previous decisions in Stonite Products Co. v. Melvin Lloyd Co., 1942, 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, which clarified the venue provisions as applied to corporations in patent infringement cases under the prior statute, was equally applicable to similar situations under the revised code. In its decision, the court laid great emphasis on the facts that the Reviser's Notes, the reports of the Committee on the Judiciary of the Senate and of the House, and the statements of persons directly connected with drafting the revision all expressed

the view that no substantive changes in the law were to be presumed unless the intention to make such changes be clearly expressed. Finding no such express intent to make a substantive change indicated in the Reviser's Notes to § 1400 (b), the court decided that no change was intended. Fourco Glass Co. v. Transmirra Products Corp., supra, 353 U.S. at pages 226–228, 77 S.Ct. at pages 790–791, and notes 6–8 therein.

■ Applying the Supreme Court's approach to the present situation, we must arrive at a similar conclusion. One of the keystone rules of legislative interpretation was expressed by the Supreme Court in the Fourco case:

"\* \* \* [I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed. [citations omitted.]" 353 U.S. at page 227, 77 S.Ct. at page 791.

The phrase "any judicial district in which it is incorporated" does not express a readily apparent and clear intention of Congress to effect a substantive change in the law. It must be presumed that Congress was aware of the Gonzales case and the interpretation it placed upon the former general venue statute as applied to corporations. Taking this fact into consideration along with the fact that the Reviser's Notes do not express any substantive change[5] and the fact that several of those having importantly to do with the revision say no change is to be presumed unless clearly expressed, and considering that no substantive change is otherwise apparent, I hold that this particular phrase of § 1391(c) made no substantive change from the prior general venue statute as it stood and was applied to corporations in the Gonzales case. See Fourco Glass Co. v. Transmirra Products Corp., supra, 353 U.S. at pages 227–228, 77 S.Ct. at pages 790–791.

■ Venue is a litigant's privilege but it is a privilege granted for a purpose. Historically the privilege of venue has been allowed so that suits will be brought in forums having a logical connection with the parties to the litigation. Generally venue relates to the convenience of the parties and affords a defendant some protection against the threat of being forced to defend an action at a place far removed from his residence. Each of the districts in which a corporation is "licensed to do business or is doing business" (which districts "shall be regarded as the residence of [a] corporation for venue purposes.")[6] are districts in which the corporate defendant is present in some form or other so that defending suits in these districts does not put it to undue hardship. It seems to follow therefore that, under the "in which it is incorporated" phrase, a

---

5. (a) Pertinent provisions of the Reviser's Notes relative to § 1391(c) read as follows:

"Section consolidates said section 111 with part of said section 112.

\*       \*       \*       \*

"Word 'reside' was substituted for 'whereof he is an inhabitant' for clarity inasmuch as 'inhabitants' and 'resident' are synonymous. (See Ex Parte Shaw, 1892, 145 U.S. 444, 12 S.Ct. 935, 36 L. Ed. 768; Standard Stoker Co., Inc. v. Lower, D.C.1931, 46 F.2d 678; Edgewater Realty Co. v. Tennessee Coal, Iron & Railroad Co., D.C.1943, 49 F.Supp. 807.

\*       \*       \*       \*       \*

"In subsection (c), references to defendants 'found' within a district or voluntarily appearing were omitted. The use of the word 'found' made said section 111 ambiguous. The argument that an action could be brought in the district where one defendant resided and a nonresident defendant was 'found,' was rejected in Camp v. Gress, 1919, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997. However, this ambiguity will be obviated in the future by the omission of such reference.

\*       \*       \*       \*       \*

"Changes were made in phraseology. \* \* \*"

(b) An illustration of a clear expression of intention to make a substantive change in the law can be found in the Reviser's Notes to § 1398, Title 28, U.S.C.

6. 28 U.S.C. § 1391(c).

domestic corporation should be required to defend a suit only in the federal district in its home state in which it is present. Absent its "doing business" in any other district in the state, this district must be that in which its principal place of business is located.

Only one decision with facts similar to the present case has come to my attention. A cursory reading of Hintz v. Austenal Laboratories, D.C.E.D.N.Y. 1952, 105 F.Supp. 187, might give the impression that that case is in conflict with the present decision. A more thorough analysis of the court's opinion shows no such inconsistency for that decision is grounded on the "is doing business" phrase of § 1391(c). The Hintz case, brought in the Eastern District of New York, involved a New York corporate defendant whose principal place of business, as established by the affidavit of its vice president, was located in the Southern District. The defendant's attorney asserted by affidavit that the corporation was not doing business in the Eastern District of New York. The court rejected the statement of the attorney in the absence of a similar affirmation in the affidavit of the corporate defendant's vice president. Instead the court found that the defendant, since it was a New York corporation, was clothed with the capacity to do business in every district in the state and, in the absence of a contrary showing, the court would presume that it did business in the Eastern District. This is made clear by the court's statement at page 187:

"I should require strict and convincing proof that any active functioning corporation in the Borrough of Manhattan is not doing business in some form or another in any of the three borroughs of the City which are included in this district."

and by its further statement at page 188:

"Since the defendant had the legal capacity as an artificial being, to do business in this district, I do not think its failure to exercise that capacity in the practical sense has

been shown, and certainly it cannot be assumed. If any presumptions were to be indulged, they would be to the contrary."

The court made it crystal clear that its decision was not based on the "in which it is incorporated" phrase of § 1391(c) when it said at page 188:

"Since the defendant is a New York corporation, it cannot be deemed to have been literally 'incorporated within this district.' Compliance with the General Corporation Law of New York * * * is assumed."

In the present case, I am satisfied by the affidavits of officers of both defendants, by the defendants' corporate charters and by admissions of the plaintiff's attorney that the defendant corporations in no way do business in the Northern District of Indiana and that their principal places of business, as contemplated by the Gonzales case, are located at Indianapolis in the Southern District. Hence, the interpretation to be given the "is doing business" phrase of § 1391(c) is not in issue and, therefore, I need make no decision as to whether that phrase is applicable to domestic as well as to foreign corporations. In any event, the Hintz case is not relevant to the present facts.

■ For the reasons stated above, the Court holds that venue has not been properly laid in the Northern District of Indiana. However, since it appears from statements of counsel for both sides and from the complaint that the period of limitations has run and, since the present motion was filed prior to the running of the statute, I do not believe that plaintiff should be penalized for failure to prophesy the Court's decision, especially when the issue presented was apparently an original one. Accordingly, I feel that the interests of justice demand that the case be transferred under the provisions of § 1406(a), Title 28 U.S.C. to the Southern District of Indiana, Indianapolis Division.